**UNITED STATES of America,
Plaintiff,**

v.

**Thomas A. HENDERSON, Defendant.**

No. 2:06–cr–039.

United States District Court,
S.D. Ohio,
Eastern Division.

May 4, 2007.

David DeVillers, Kevin W. Kelley, United States Attorneys, Columbus, OH, for Plaintiff.

David Clark Stebbins, Diane M. Menashe, Diane M. Menashe Co LPA–2, Columbus, OH, for Defendant.

## OPINION & ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before this Court on numerous death penalty related motions filed by Defendant Thomas A. Henderson ("Defendant"). This Court conducted an oral hearing on these motions on March 9, 2007, and, based on those arguments and those set forth in memoranda submitted to this Court, rules as set forth below.

### II. BACKGROUND

Defendant has been indicted for two counts of capital murder with accompanying weapons charges. Specifically, Defendant is charged with two counts of murder in retaliation for providing information to law enforcement and/or serving as a witness in a federal prosecution, 18 U.S.C. § 1513(a)(1)(B), and two counts of committing these crimes with a firearm, 18 U.S.C. § 924(c)(1)(A)(iii). The Government has given notice that it is been authorized by the Attorney General to seek the death penalty for Defendant and intends to do so. Defendant has filed several motions relating to the death penalty, discovery, and trial procedures, and the Government has responded.[1]

---

1. This Opinion and Order **MOOTS** the Government's Motion to Continue Deadline for Responses, Doc. 63, as all responses have been filed and reviewed by this Court.

## III. ANALYSIS

### A. Defendant's Motion to Appear in Civilian Clothing at All Proceedings (Doc. # 42)

Defendant asks this Court to order the United States Marshals in charge of transporting him to and from Court to permit him to change from his jail uniform into civilian clothes before appearing in any court proceedings, including pre-trial appearances. The Government does not object to Defendant's request. Accordingly, Defendant's Motion is **GRANTED.** Defendant has the burden of obtaining such civilian clothing and providing it in a timely manner to the U.S. Marshals' Service, in advance of all court appearances.

### B. Defendant's Motion to Appear at all Proceedings without Restraints (Doc. # 43)

■ Defendant asks this Court to permit him to appear at all proceedings without restraints and to keep the jurors from viewing him in restraints. The Government does not object to any reasonable attempts to shield the jurors from viewing Defendant in restraints.

The gravity of Defendant's alleged crimes, in addition to this Court's understanding of Defendant's past convictions, militates in favor of restraints, so as to prevent any future violence or possibility of escape. Defendant's suggested security alternative—additional security personnel—lacks practicality and safety. Courthouse security will already be substantially burdened by this trial's length (four to six weeks) and by a potentially large number of trial observers. Furthermore, restraints provide a degree of assured safety not available through other means.

To ensure that Defendant is not unduly prejudiced by this Court's need to secure the courtroom, however, every effort will be made to minimize the jury's awareness of the restraints. Defendant will be required to wear leg and belt restraints only, which will not be obvious to the jury.[2] Moreover, Defendant will be escorted into the courtroom before the jury members take their seats, and he will leave the courtroom after the jury has departed, thus, eliminating the jury's opportunity to see the restraints. Additionally, leg and belt restraints, as opposed to handcuffs, will allow Defendant to participate actively in his case as he will be free to take notes or bring something to his counsels' attention.

Thus, in light of Defendant's alleged crimes and because of this Court's need to protect the security of the courtroom, Defendant will wear leg and stun belt restraints, which will be shielded by a skirt around the table, during both the trial phase and the sentencing phase, if the latter is necessary. At all other times— for instance when Defendant is traveling to and from the courthouse—normal security measures will be utilized, including handcuffs. Accordingly, Defendant's Motion to Appear at All Proceedings Without Restraints is **GRANTED in part** and **DENIED in part.**

### C. Defendant's Motion to Exclude Other Acts Evidence (Docs. # 44 and # 96)

■ Defendant moves this Court for an order prohibiting the Government from admitting any evidence relating to his prior criminal convictions or prior alleged criminal conduct for which Defendant is not indicted in the instant case. Specifically, Defendant asks this Court to prohibit reference to any of the following topics during trial:[3]

---

**2.** Should Defendant choose to testify, this Court will make a determination as to re-

straints he will wear on the witness stand at that time.

**3.** Defendant cautions that this list is not ex-

(1) Defendant's prior conviction for bank robbery on or about April 27, 1973 in the Southern District of Ohio;

(2) Defendant's prior conviction of manslaughter on or about 1982 in Franklin County, Ohio;

(3) Defendant's prior conviction for drug distribution on or about April 29, 2002 in the Southern District of Ohio;

(4) Defendant's prior conviction of making a false statement in the acquisition of a firearm on or about April 29, 2002 in the Southern District of Ohio;

(5) Defendant's prior conviction for twelve counts of money laundering on or about April 29, 2002 in the Southern District of Ohio;

(6) Defendant's alleged participation in the intentional killing of Edward Boyd on or about June 26, 1981 in Franklin County, Ohio; and

(7) Defendant's alleged intentional killing of Ronald Beauford on or about May 30, 1981 in Franklin County, Ohio;

(8) Defendant's alleged intentional killing of Robert Catchings on or about May 30, 1981 in Franklin County, Ohio;

(9) Defendant's alleged participation in bank robberies other than the 1981 robbery of the Macon Bank & Trust Company in Macon, Georgia; and

(10) Defendant's alleged acts of intimidating, threatening or trying to influence the testimony of potential government witnesses in this case.

In the alternative, Defendant requests that this Court conduct a pre-trial evidentiary hearing and require the Government to prove that any evidence of criminal convictions or alleged criminal conduct outside of the instant case offered by the Government satisfies one of the limited exceptions for admission under the Federal Rules of Evidence. Moreover, if this Court permits the Government to introduce such evidence, Defendant requests proper limiting instructions.

The Government contends that some of the "other acts" evidence listed by Defendant will be appropriate for introduction during the trial phase. The Government asserts that it "does not anticipate" introducing evidence of the following during its case in chief in the trial phase: [4]

(1) Defendant's prior conviction for bank robbery on or about April 27, 1973 in the Southern District of Ohio;

(2) Defendant's prior conviction of manslaughter on or about 1982 in Franklin County, Ohio;

(3) Defendant's prior conviction for drug distribution on or about April 29, 2002 in the Southern District of Ohio;

(5) Defendant's prior conviction for twelve counts of money laundering on or about April 29, 2002 in the Southern District of Ohio;

(8) Defendant's alleged intentional killing of Robert Catchings on or about May 30, 1981 in Franklin County, Ohio; and

(9) Defendant's alleged participation in bank robberies other than the 1981

haustive.

**4.** The Government maintains that in rebuttal or cross-examination of defense witnesses, some of these acts may become relevant, and therefore, possibly offered as evidence. This Court will determine the admissibility of such evidence at that time.

robbery of the Macon Bank & Trust Company in Macon, Georgia.

With respect to items (3), Defendant's prior conviction for drug distribution, and (5), Defendant's prior conviction of twelve counts of money laundering, however, the Government will offer numerous audiotapes of conversations conducted by Defendant while he has been in prison for such charges. The Government asserts that it will have to explain to the jury how law enforcement obtained these taped conversations, and will work with Defendant's counsel before trial to minimize any unreasonable negative impact this evidence may present.

The Government submits that the following items do not represent "other bad acts" evidence prohibited by Rule 404(b) of the Federal Rules of Evidence, but rather are integral to the offense conduct for which Defendant has been charged in this case:

(4) Defendant's prior conviction of making a false statement in the acquisition of a firearm on or about April 29, 2002 in the Southern District of Ohio;

(6) Defendant's alleged participation in the intentional killing of Edward Boyd on or about June 26, 1981 in Franklin County, Ohio; and

(10) Defendant's alleged acts of intimidating, threatening or trying to influence the testimony of potential government witnesses in this case.

With respect to Defendant's conviction for making a false statement in the purchase of a firearm, the Government intends to introduce evidence that would indicate that this firearm was the murder weapon. In addition, the Government asserts that Defendant's ability to purchase a firearm while utilizing a false identification card also is relevant to the instant case.

The Government also argues that Defendant's alleged participation on the intentional killing of Edward Boyd is directly related to the charged offenses. The Government explains that Boyd was also a potential witness for the 1981 Macon Georgia bank robbery for which Defendant was convicted, and which is the focus of the current indictment. Evidence of Boyd's alleged killing, the Government argues, further supports the motive alleged for the murders charged in this case.

Regarding Defendant's alleged threats and efforts to influence the testimony of potential government witnesses in this case, the Government states that such spoliation of evidence, including threatening a witness, tends to establish consciousness of guilt without inferring to the character of Defendant, and therefore is relevant and admissible under the Federal Rules of Evidence. Fed.R.Evid. 402.

Finally, the Government contends that the final item—(7) Defendant's alleged intentional killing of Ronald Beauford on or about May 30, 1981 in Franklin County, Ohio-may become relevant at trial depending on the development of the case. The Government states that it will notify this Court and Defendant before any such evidence is introduced so a determination of admissibility can be made before any such testimony is presented to the jury.

Defendant retorts that the Government provides no explanation of why this evidence is not prohibited under Fed.R.Evid. 404(b), or why it is an integral part of the offense conduct with which Defendant is charged. During oral arguments on this Motion, the parties submitted to this Court that the primary dispute over the "other acts evidence" rests in the evidence of Defendant's alleged participation in the murder of Edward Boyd (aka Henry Lee Phillips) (hereinafter, "Boyd") on June 26, 1981. This Court ordered further briefing on this issue to address the due process

concerns Defendant raised in oral arguments. The parties have complied.

According to the Government, the factual background surrounding the Boyd murder is as follows. Boyd and Stanley Humphrey ("Humphrey") drove Defendant back from Macon, Georgia to Columbus, Ohio after Defendant committed a bank robbery in Macon. The Government alleges that because Defendant was concerned that Boyd would provide information to law enforcement about the robbery, Defendant solicited Humphrey to kill Boyd. The Government claims that the day after returning from Macon, June 24, 1981, Defendant drove Humphrey to Boyd's residence where Humphrey killed Boyd and seriously injured Boyd's girlfriend, Geraldine Thompson ("Thompson"). Humphrey was later convicted of Boyd's murder and Thompson's attempted murder. The Government claims that evidence of Defendant's alleged participation in these crimes is intimately related to the Indictment here because Defendant is charged with killing Ecolia Washington and Robert Bass, the victims in this case, for their assistance in the prosecution of Defendant for the Macon, Georgia robbery. Because the motive for killing Boyd is the same, the Government claims, evidence of the offenses is relevant and admissible.[5]

Defendant argues that, for the following reasons, due process requires that the Government be prohibited from introducing such evidence in the trial phase: (1) Henderson has never been charged or indicted for Boyd's murder or Thompson's attempted murder; (2) The offense occurred more than 25 years ago, and in the passage of time, witnesses and physical evidence in Defendant's defense are no longer accessible; (3) Defendant's name is not mentioned by either party during Humphrey's prosecution and Thompson testified that the only individual responsible for the shootings was Humphrey; (4) The introduction of such evidence at this point in time is tantamount to an unconstitutional pre-indictment delay.

Rule 404(b) of the Federal Rules of Evidence forbids admission of evidence of other crimes or acts when offered "to prove the character of a person in order to show that he acted in conformity therewith." Evidence of other crimes or acts may, however, be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The list of permissible uses of evidence of other crimes or acts set forth in Rule 404(b) is neither exhaustive nor conclusive. *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir.1986). Rule 404(b) admits evidence of other crimes or acts if the evidence is not offered to prove the conduct of a person by resorting to an inference as to his character, regardless of whether it fits within one of the listed uses. *Id.* Although relevant— and properly admissible under the 404(b) exceptions—"evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Therefore, this Court must determine whether the evidence offered by the Government here is relevant to the case and whether the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to Defendant.

This Court finds that, while evidence of the Boyd murder and Thompson attempt-

---

**5.** According to the Government, there was no applicable statute in effect in 1981 that survived the statute of limitations which was available to charge Defendant upon discovery of his involvement in the Boyd murder.

ed murder may be relevant to support further Defendant's motive for killing those who may provide, or have provided, information to law enforcement relating to the Macon robbery, the evidence is substantially outweighed by the danger of unfair prejudice. First, the alleged offenses against Boyd and Thompson are too remote in time and their introduction would deny Defendant his right to present a meaningful and effective defense against such accusations because relevant evidence is likely to be lost or untraceable. *See United States v. Tolley,* 1999 WL 137620, 173 F.3d 431 (6th Cir.1999) (stating that in order for past acts evidence to be admissible, "the evidence must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried") (citing *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir. 1991)); *United States v. Green,* 151 F.3d 1111, 1113 (8th Cir.1998) (stating that, under 404(b), evidence is admissible if it is relevant to a material issues and not overly remote in time); *United States v. Norman,* 1993 WL 425964, at *5, 8 F.3d 32 (9th Cir.1993) (same).

Second, this Court agrees with Defendant's analogy to pre-indictment delay. These offense are uncharged, unindicted crimes for which Defendant could now be punished should the Government be permitted to introduce relevant evidence. "[U]nreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including . . . 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett v. United States,* 505 U.S. 647, 654, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (quoting *Barker v. Wingo,* 407 U.S. 514, 532, 92

S.Ct. 2182, 33 L.Ed.2d 101 (1972)). While Defendant has not been formally accused of these offenses, and thus pre-indictment delay doctrine does not apply, the probative value of such evidence would unfairly prejudice Defendant and his ability to defend the accusations. For these reasons, Defendant's Motion to exclude the introduction of evidence relating to the Boyd murder and Thompson attempted murder, during the trial phase of the prosecution, is **GRANTED.** Defendant's Motion with respect to the remaining evidence set forth above is **MOOT,** in light of the parties' agreements and representations to this Court. Should further "other acts" evidentiary issues arise at trial, this Court will address them at that time.

## D. Defendant's Motion in Limine to Exclude Photographs of the Deceased (Doc. # 45)

Defendant requests that this Court conduct a pretrial hearing to preview the Government's photographs of both of the victims taken during forensic examinations and issue an order in limine preventing the Government from admitting any of these photographs into evidence. Defendant claims that none of the photographs of the forensic examinations of the victims' remains is relevant because they do not reliably reveal the time, place, or manner of death. In addition, Defendant claims that any probative value the photographs may contain is outweighed by the prejudicial impact the pictures would have on the jurors. The Government opposes Defendant's motion, and asserts that the photographs are relevant and necessary to the Government's case. The Government asserts that at least 45 days prior to trial, it will inform Defendant of the specific photographs the Government intends to use.[6]

---

**6.** The Government has already provided Defendant with all of the photographs in its possession.

Therefore, the Government claims, Defendant will have adequate time to object and no pretrial hearing is necessary.

Due to the anticipated graphic nature of the photographs, and sensitivity of the subject matter, and to ensure the orderly presentation of evidence at trial, this Court orders the Government to provide Defendant with all photographs it intends to use at trial. If, after viewing the photographs, Defendant has any objections, Defendant is to file a motion to exclude those photographs. This Court will then, if necessary, hold a pretrial hearing in which the Government will explain the relevance of the opposed photographs and Defendant can present his objections. Until that time, however, this Court will not issue an order preventing the Government from admitting any of these photographs into evidence. This Court will take the current arguments under advisement and will issue an order, if necessary, after all objections have been resolved. Defendant's Motion is **GRANTED in part** and **DENIED in part.**

### E. Defendant's Motion to Prohibit any References to the First Phase of These Proceedings as the "Guilt Phase" (Doc. # 46)

Defendant asks this Court to prohibit the Government and this Court itself from referring to the first phase of this proceeding as the guilt phase or to otherwise use the word "guilt" as a descriptor for the first part of these proceedings during which Defendant is adjudicated guilty or not guilty. The Government does not object to this request. Accordingly, the first phase of the trial shall be referred to as the "trial phase," not as the "guilt phase" so as to avoid any undue influence on the jurors. In addition, if necessary, the second phase of the trial shall be called the "eligibility phase" and the third and final stage will be referred to as the "sentencing

phase." Defendant's motion is **GRANT-ED.**

### F. Defendant's Motion for Individual Sequestered Voir Dire on Death Penalty, Publicity, and Other Issues (Doc. # 47)

Defendant requests that this Court question each juror, individually, regarding his or her stance on, or experience with: publicity, the death penalty, the likelihood of reversal on appeal or parole in the event of a life sentence, a defendant's right to not testify, mental illness, child abuse, job loss, substance abuse, neglect, and any other sensitive or prejudicial matters relevant to this case.

While this Court recognizes that there is a due process right to an impartial jury, *Morgan v. Illinois,* 504 U.S. 719, 726–27, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), this Court also notes that it retains great latitude in conducting voir dire. As the Supreme Court explained in *Rosales–Lopez v. United States,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981):

> Despite its importance, the adequacy of *voir dire* is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions.

*Id.* at 188, 101 S.Ct. 1629.

This Court, while mindful of its duty to employ a system that creates a reasonable assurance that prejudice would be discovered if present, will utilize its discretion to conduct voir dire in groups of five jurors. *United States v. Saimiento–Rozo,* 676 F.2d 146, 148 (5th Cir.1982); *Trujillo v. Sullivan,* 815 F.2d 597, 607 (10th Cir.1987). Should this Court find this small group system unworkable for any reason, for ex-

ample, if this Court finds that jurors are being less than candid in light of other panel members' presence, this Court will modify its approach. Therefore, Defendant's Motion for Individual Sequestered Voir Dire on Death Penalty, Publicity, and Other Issues is **DENIED in part** and **GRANTED in part.**

### G. Defendant's Motion to Exclude Venire Persons Who Cannot Fairly Consider Mitigating Evidence and/or Who Would Automatically Vote for Death upon a Finding of Guilt in the Culpability Phase; and Defendant's Motion to Enforce Standards of *Witherspoon v. Illinois* and *Wainwright v. Witt* for Removing Death Scrupled Jurors For Cause (Docs. # 48 and # 49)

Defendant requests that this Court excuse for cause all venire persons who cannot fairly consider mitigation evidence and/or who would automatically sign a death verdict after a sentencing hearing based on a finding of guilt in the trial phase. In addition, Defendant asks that this Court use the constitutional standards enunciated by the United States Supreme Court in *Witherspoon v. Illinois* and *Wainwright v. Witt* for removing death scrupled jurors for cause. In other words, Defendant asks this Court to apply the standard constitutional jury selection principles to remove jurors whose death penalty views would prevent or substantially impair the performance of their duties as jurors to be fair and impartial. The Government does not oppose Defendant's Motions to the extent that the Motions simply reiterate the appropriate legal standards for jury selection. Accordingly, this Court **GRANTS** Defendant's Motions and will exclude for cause all venire persons who would not be able faithfully and impartially to follow the law applicable to capital trials.

### H. Defendant's Motion to Prohibit the Government's Use of Peremptory Challenges to Exclude Venire Persons with Concerns About Imposing the Death Penalty (Doc. # 50)

■ Defendant asks this Court to prohibit the Government from excluding, through the use of peremptory challenges, any prospective juror who expresses concern over the imposition of the death penalty and/or capital punishment in general. The Government objects, pointing out that Defendant fails to cite any cases precluding the Government from exercising peremptory challenges on potential jurors who express opposition to the death penalty.

The essential nature of peremptory challenges is that they may be exercised by the Government and Defendant without a reason stated, without inquiry, and without being subject to the court's control. *McCoy v. Goldston,* 652 F.2d 654, 657–58 (6th Cir.1981) (citing *Swain v. Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). "While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable." *Id.* (quoting *Swain,* 380 U.S. at 220, 85 S.Ct. 824). While the United States Supreme Court has recognized two exceptions to unbridled ability to exercise peremptory challenges, *see Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (prohibiting use of peremptory challenges to exclude a prospective jury member on the basis of race); *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (prohibiting use of peremptory challenges to exclude a prospective jury member on the basis of gender), otherwise eligible jurors who express concerns about capital punishment in

general—not rising to the level of for cause dismissal—do not fall within this ambit. The United States Courts of Appeals for the Fourth, Fifth, Seventh, and Eighth Circuits have held that opposition to the death penalty is an acceptable and race-neutral reason for the Government's exercise of a peremptory challenge. *United States v. Barnette*, 211 F.3d 803, 812 (4th Cir.2000), *vacated on other grounds,* —— U.S. ——, 126 S.Ct. 92, 163 L.Ed.2d 32; *United States v. Webster*, 162 F.3d 308, 348–50 (5th Cir.1998); *United States v. Cooper*, 19 F.3d 1154, 1160–62 (7th Cir.1994); *United States v. Moore*, 149 F.3d 773, 780 (8th Cir.1998). Just as the Government has no power to preclude Defendant from preempting otherwise death eligible jurors who express strong feedings in favor of the death penalty, Defendant has no power to preclude the Government from preempting otherwise death eligible jurors who express strong feelings against the death penalty. Defendant's Motion is **DENIED.**

## I. Defendant's Motion to Require the Jurors to Answer Interrogatories Regarding the Manner in Which they Weigh the Aggravating Factors and the Mitigating Factors (Doc. # 51)

Defendant moves this Court for leave to submit "appropriate interrogatories" to the jurors during the sentencing phase requiring them to articulate the basis for their sentencing verdict. Defendant asserts that without a means to determine the precise aggravating factors and mitigating circumstances considered by the jury, "a reviewing court will have no way of knowing whether the decision is rational or arbitrary, appropriate or improper." Defendant does not offer any proposed interrogatories, but notes that interrogatories were "appropriately and successfully used" in another case tried before this Court, *United States v. Mayhew*, Case No. 2:03–cr–165, and asks this Court to "follow the procedure and use of interrogators as the Court did in *Mayhew.*"

The Government objects to Defendant's Motion and states that this Court, in *Mayhew*, used special finding verdict forms, not in-depth interrogatories which Defendant's motion contemplates. The Government objects to a detailed analysis of the deliberative process by the jury, as it is in violation of Rule 606(b) of the Federal Rules of Evidence which forbids inquiry into the deliberative process, except for whether extraneous prejudicial information or improper outside influences played a role in the deliberations and improperly influenced the verdict.

At the March 9, 2007 hearing, Defendant clarified that his Motion merely requests the same special finding forms used by this Court in the *Mayhew* case and not more in-depth interrogatories. The Government does not object to such form. Defendant's motion is, therefore **GRANTED** and special finding verdict forms will be issued to the jury.

## J. Defendant's Motion for Second Voir Dire Prior to Sentencing Phase (Doc. # 52)

■ Defendant requests this Court to order a second voir dire of the already death-qualified jury prior to the sentencing phase should Defendant be found guilty at the conclusion of the trial phase. Defendant asserts that jurors may develop views over the course of the trial that would impair their ability to fairly consider mitigating evidence, and that voir dire questions are more likely to "elicit a realistic and honest response when asked prior to the penalty phase after the jurors have heard the evidence of the crime, rather than as an abstract hypothetical question during the pretrial voir dire." The Government opposes Defendant's Motion.

As the Supreme Court observed in *Morgan v. Illinois,* 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), "[t]he Constitution . . . does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury." *Dennis v. Mitchell,* 354 F.3d 511, 523–24 (6th Cir. 2003) (quoting *Morgan* ). Inherent in the Sixth Amendment right to an impartial jury, however, "is an adequate voir dire to identify unqualified jurors." *Id.* Thus, a Court must excuse for cause a juror who would not be able to follow the law regarding mitigating circumstances and would automatically impose death upon a finding of guilt. The purpose and protection of *Morgan,* therefore, requires this Court to ascertain the jurors' basic beliefs and core values about the death penalty before entering any phase of the trial in order to ensure their ability to be fair and impartial.

A second voir dire is unnecessary and would, in fact, undermine the initial voir dire because this Court will have previously determined that each sitting member of the jury panel is death qualified. Each panel member will have answered a detailed questionnaire about numerous issues, including capital punishment, and members will be subjected to an extensive questioning period during voir dire regarding each juror's views on the death penalty. Both parties will have ample time to question the jurors, and before being selected, each juror will assure this Court and all counsel that he or she will be able to consider fairly aggravating and mitigating factors and weigh them accordingly, regardless of whether the evidence showed beyond a reasonable doubt that Defendant was guilty.

Defendant's Motion, therefore, is **DENIED.**

## K. Defendant's Motion to Permit the Defense to Admit all Relevant Mitigating Evidence in the Sentencing Phase (Doc. # 53)

Defendant moves this Court to permit him to introduce any evidence that is "relevant and mitigating whether or not it fits within one of the specifically enumerated subsections of 18 U.S.C. § 3592(a)." The Government does not object to the admission of relevant evidence, but contends that any evidence that fails to fall within § 3592(a) is irrelevant under Rule 401 of the Federal Rules of Evidence and should, therefore, be excluded.

Title 18, Section § 3592(a) of the United States Code states that "[i]n determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider *any* mitigating factor, including the following:" impaired capacity, duress, minor participation, equally culpable defendants, no prior criminal record, disturbance, victim's consent, and other factors. 18 U.S.C. § 3592(a) (emphasis added). Section 3592(a)(8), the catch-all provision, allows the introduction of "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against the imposition of the death sentence." In addition, § 3593(c), which discusses proof of mitigating and aggravating factors at the sentencing hearing, states that "[t]he defendant may present any information relevant to a mitigating factor." Information offered during the sentencing hearing is admissible "regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

The Government concedes that as long as the proffered mitigation evidence is relevant, it is admissible under 18 U.S.C. §§ 3592(a) and 3593(c). This Court holds that Defendant may introduce all relevant mitigating evidence during the sentencing phase and **GRANTS** Defendant's motion.

**L. Defendant's Motion to Allow Allocution Without Cross–Examination During Penalty Phase (Doc. # 54)**

■ Defendant, pursuant to Federal Rule of Criminal Procedure 32(i)(4) and the Due Process Clause of the Fifth Amendment, moves this Court for an order permitting him to allocute before the jury, in an unsworn statement and without cross-examination, prior to sentencing, should this case reach such stage. The Government maintains that no statute or rule permits him to do so.

The Supreme Court has not addressed the constitutionality of a Defendant's right to allocution. *See McGautha v. California*, 402 U.S. 183, 218 n. 22, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). The Government, however, concedes that allocution is a well-established procedural right.

Defendant relies upon Fed.R.Crim.P. 32(i)(4)(ii) to support his motion. That rule provides: "Before imposing sentence, the court must ... (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." The Government retorts that under such rule, allocution takes place before the court *imposes* the sentence, not before a jury retires to determine the sentence in a capital case. Additionally, the Government states that because a defendant has a right to testify during either or both the trial and sentencing phases, an unsworn declaration by Defendant is not warranted or authorized, as he may still be heard, but must do so subject to the same rules as any other mitigation witness. The Government ar-

gues that the Fourth, Fifth, and Eighth Circuits have each concluded that no right of unsworn allocution exists. *See United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005) (stating that: (1) the defendant did not have a statutory right to make statements to the jury during the sentencing phase without being subject to cross-examination; (2) the district court satisfied Rule 32 when it allowed the defendant to speak "before imposing sentence;" and (3) although under 18 U.S.C. § 3594 the defendant's allocution could not have mitigated his sentence because the court followed the jury's recommendation of the death penalty, "nowhere does Rule 32 grant [the defendant] a right to allocution before a jury; Rule 32 speaks only of 'the court.' "); *United States v. Barnette*, 211 F.3d 803, 820 (4th Cir.2000), vacated on other grounds, —— U.S. ——, 126 S.Ct. 92, 163 L.Ed.2d 32 (2005) (distinguishing a denial of a defendant's request to allocute to the state sentencing court, which is a denial of due process, from a denial of a defendant's request to allocute to the sentencing jury, which is not a denial of due process); *United States v. Hall*, 152 F.3d at 391–96 (5th Cir.1998) ("The text of [32(i)(4)(ii) ] provides no basis for concluding that the defendant has a right to make a statement to the jury prior to the jury's arriving at its sentencing recommendation. Compliance with the strict language of the rule is achieved when ... the district court allows the defendant to make a statement to the court after the jury returns its recommendation but before the district court imposes sentence."), cert. denied, 526 U.S. 1117, 119 S.Ct. 1767, 143 L.Ed.2d 797 (1999).

For the following reasons, this Court finds that Defendant has a right to allocute before the sentencing jury subject to an appropriate limiting instruction. First, the Government's argument that Rule 32 only permits allocution before the imposition of the sentence is inconsistent with the plain

language of the Rule when read in its entirety. The rule states, "Before imposing sentence, the court must ... (ii) address the defendant personally *in order to permit the defendant to speak or present any information to mitigate the sentence.*" The Government focuses on the first part ("before imposing the sentence") but the last part demonstrates that the purpose of allocution is to present any information to mitigate the sentence. Allowing Defendant to speak only after the sentence has been decided by the jury, but before this Court merely imposes the sentence, does not allow Defendant to present information to mitigate the sentence.[7] A right to allocute only before the judge reads the jury's sentence would be an empty formality.

Second, under 18 U.S.C. § 3593, the defendant may present "any information relevant to a mitigating factor." In addition, such information is admissible "regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id.* Therefore, Defendant may offer an unsworn, un-cross-examined statement to the jury before it deliberates on his sentence. Of course, the Government may argue that the probative value of such statement is outweighed by the danger of unfair prejudice, and this Court may exclude Defendant's statement on that basis, if necessary. This Court may, however, also cure such danger with a limiting instruction, reminding the jurors that they should carefully consider the credibility of such statements, given that they are not sworn or cross-examined.

Third, the defense makes a compelling argument to dispute *United States v. Barnette,* which distinguished a denial of a defendant's request to allocute to the state sentencing court, (a denial of due process) from a denial of a defendant's request to allocute to the sentencing jury, (not a denial of due process). Defendant rather cogently argues that it is illogical, on the one hand, to allow a defendant to present allocution before a sentencing judge in a noncapital case, where the judge can actually consider such statement before sentencing, yet on the other hand, in a capital case, only to allow a defendant to speak *after* the sentencing jury has made its decision. In effect, if a defendant waives his right to a jury trial, he will be permitted to present allocution before the sentencing decisionmaker. By exercising such jury trial right, however, under the Government's view, the defendant then waives his right to allocute before the decision-maker-a right that the Government concedes is a well-established procedural right. This Court will not apply a rule in such a way that would have a chilling effect on Defendant's exercise of his fundamental right to a jury trial.

Finally, this Court notes that the textual definition of allocution supports Defendant's Motion. Black's Law Dictionary defines "allocution" as:

An unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence. *This statement is not subject to cross-examination.*

---

7. Under 18 U.S.C.A. § 3594, the court sentences the defendant according to the jury's determination: "Upon a recommendation ... that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly."

Black's Law Dictionary (8th ed.2004) (emphasis added).

Without reaching the question of whether Defendant has a constitutional right to allocution, this Court recognizes that it has discretion to permit Defendant to allocute pursuant to Rule 32. Defendant's motion is **GRANTED.**

## M. Defendant's Motion to Instruct on the Specific Mitigating Factors Raised by Defense During the Sentencing Phase, and to Prohibit the Prosecution from Arguing Statutory and Nonstatutory Mitigating Factors Not Raised by the Defense (Doc. # 55)

Defendant moves this Court to instruct the jury regarding all statutory and nonstatutory mitigation factors that he presents and to prohibit the Government from raising or arguing mitigating factors not raised, thereby highlighting matters Defendant did not raise. The Government does not object to this Court instructing the jury on the mitigating factors that Defendant raises as long as the factors have been established by some evidence and the instructions are not redundant. Further, the Government states that it will not mention mitigating factors that are not raised by Defendant, and this Court accepts the Government's contention in this regard.

This Court, therefore, **GRANTS** Defendant's Motion to instruct the jury on all mitigating factors that he presents, both statutory and nonstatutory.[8]

**8.** In addition, pursuant to the requirement in 18 U.S.C. § 3593(a) and (c), the Government states that it has already provided written notice to Defendant of all statutory and nonstatutory aggravating factors that the Government intends to rely upon in the event this case reaches the sentencing phase. The Government has requested that the Defendant provide it with written notice of the proposed mitigating factors in a timely fashion. This

## N. Defendant's Motion in Limine to Limit Scope of Any Rebuttal Evidence Offered by the Government in the Sentencing Phase (Doc. # 56)

■ Defendant moves this Court for an order limiting the Government's presentation of rebuttal evidence to evidence that actually rebuts mitigating evidence presented by Defendant during the sentencing phase. Specifically, Defendant requests that this Court impose the following restrictions on the Government in the event that the Government seeks to admit rebuttal evidence in the sentencing hearing that may be held in this case:

1. The opportunity to rebut arises only when Defendant has placed in issue the mitigating factor, as it is Defendant who has the right to present and argue the mitigating factors, if he does not do so, no comment on any factors not raised by him is permissible.

2. The Government may rebut mitigation evidence offered by the defendant where the prosecutor has a good faith basis for believing that such evidence is false, or incomplete.

3. The right to rebut is limited to those instances where the defense offers a specific assertion, by a mitigating witness or by the defendant, that misrepresents the mitigating factor.

4. To avoid prejudice to the defense, and the possibility of a mistrial, the Government shall proffer such rebuttal evidence to the judge away from the hearing of the jury.

Court notes that 18 U.S.C. § 3593(c) states, "The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided...." Therefore, there appears to be no authority that requires Defendant to provide the Government with the information it seeks.

5. In certain instances where the potential for prejudice and inflaming of passions is significant, the proffered rebuttal evidence will be admitted only under the following evidentiary standard: that the probative value of each piece of evidence outweighs the danger of prejudice to the defendant.

The Government states that it is aware of the boundaries of proper rebuttal evidence and does not believe that Defendant's motion is necessary or appropriate.

This Court holds that the Government's rebuttal evidence must stay within the parameters set forth by 18 U.S.C. § 3593(c), which clearly permits the Government to rebut any mitigation evidence set forth by Defendant, and by various courts interpreting the statute's rebuttal provision. The relevant provision, reads in pertinent part as follows:

> The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.

18 U.S.C. § 3593(c).

Additionally, the court in *United States v. Jackson*, 327 F.3d 273, 305–07 (4th Cir. 2003) outlined the proper scope of rebuttal testimony. There, the Fourth Circuit found the district court's decision to admit a videotape in error because portions of the videotape, which were supposedly introduced to refute the defendant's mother's mitigation testimony, had no connection to the underlying testimony.[9] The court explained: "[R]ebuttal evidence must be reasonably tailored to the evidence it seeks to refute. Rebuttal evidence is defined as 'evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party; that which tends to explain or contradict or disprove evidence offered by the adverse party.'" *Id.* at 305 (citing *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir.2001)). Moreover, the court found that "there must be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut." *Id.* (citations omitted).

In short, this Court agrees with Defendant's argument that the Government should only be permitted to rebut mitigation evidence if Defendant has opened the door to that particular issue. Moreover, all rebuttal evidence must be sufficiently connected to the underlying testimony. Both the statute and the very definition of rebuttal evidence require as much. Any specific evidentiary objections or requests for limiting instructions will be ruled upon during the sentencing hearing.

■ This Court finds premature, however, Defendant's request that this Court hold a preliminary sidebar before the government offers each piece of rebuttal evidence. Although this Court is not averse to doing so, this Court will not make a blanket ruling in the abstract. The Court

9. The defendant's mother, Mrs. Jackson, testified as to her son's various difficulties maintaining employment and what she described as his emotionally delicate state in the month before the underlying murder. The court in *Jackson* explained that portions of the videotape were properly categorized as rebuttal evidence. For example, the defendant, on the videotape, described his life as "normal" in the month leading up to the murder, thereby rebutting the mother's mitigation testimony to the contrary. *Jackson*, 327 F.3d at 306. The court found, however, that the majority of the videotape was improper material because it contained "rants about politicians, prosecutors, and police, describing them as 'scum,' and 'the devil.'" *Id.* at 306. These diatribes, the court explained, had no nexus to his mother's testimony and thus, should not have been admitted. *Id.*

is far better equipped to handle sidebar requests and various evidentiary objections on a case-by-case basis during the sentencing phase. This Court is well aware of its role as gatekeeper and its statutory powers to exclude inadmissible evidence. 18 U.S.C. § 3593(c) ("[I]nformation may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.").

In sum, this Court **GRANTS** Defendant's Motion to the extent it requests compliance with 18 U.S.C. § 3593(c). Further, this Court expects both parties to remain within the statutory parameters of rebuttal evidence, and all specific objections and sidebar requests will be ruled upon during the sentencing phase.

## O. Defendant's Motion for Restrictions on Admission of Victim Impact Evidence (Doc. # 57)

Defendant's motion seeks to limit the Government's victim impact testimony to one adult member of each victim's family. Defendant further requests that the victim impact witness be limited to reading his or testimony from a prepared written statement approved by this Court in advance of the testimony of the witness, and that each witness be admonished in advance that he or she will not be allowed to testify if unable to control personal emotions. Further, Defendant requests that this Court strictly limit the Government's comments on the victim impact testimony to the confines of what has been read by the witnesses.

The Government objects to Defendant's specific request, but offers to present restrictively victim impact evidence. The Government contends that testimony will be limited to the personal characteristics of the victims (Robert Bass and Ecolia Washington) as well as the impact of these murders upon each witness. Additionally,

the Government states that each witness will be instructed not to give their opinion about the crime or the appropriate punishment, and it will require each witness to submit his or her testimony, in writing, after a verdict in the trial phase should the Government prevail. The Government has no objection submitting these statements to this Court *ex parte* for the Court's advance approval.

At the March 9, 2007 hearing, the parties represented to this Court that they reached an agreement regarding limitations on victim impact evidence. Should this matter reach the sentencing phase, the Government will have each of its victim witnesses prepare a written statement. This Court will then conduct an *ex parte* in camera review of the statements for admissibility in light of 18 U.S.C. §§ 3593(a) and (c) (stating that the government may present any evidence relevant to any aggravating factor listed in the notice of intent to seek the death penalty which "may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family") and Supreme Court precedent. *See Payne v. Tennessee*, 501 U.S. 808, 825–27, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (holding that the admission of victim impact evidence is permissible but noting that the defendant's due process rights can be infringed where the victim impact evidence introduced is "so unduly prejudicial that it renders the trial fundamentally unfair").

Once this Court has conducted its review, redacted any statements which it deems irrelevant or prejudicial, this Court will permit the Government's victim impact witnesses to read their statements verbatim but will not allow those witnesses to

deviate from their written statements. The Government is to instruct those witnesses to refrain from reflecting excessive emotion and that the witnesses' failure to do so might result in the Court's decision to terminate their testimony. Defendant's motion for restrictions is, therefore **MOOT,** in light of the parties' agreement.

### P. Defendant's Motion to Strike Notice of Intent to Seek the Death Penalty Due to the Unconstitutionality of the Federal Death Penalty Act of 1994 (Docs. # 58 and # 88)

Defendant argues that the Federal Death Penalty Act ("FDPA") is unconstitutional because it: (1) permits the prosecution to define nonstatutory aggravating factors; (2) authorizes the weighing of nonstatutory aggravating factors; (3) limits Defendant's right to present mitigating evidence; (4) fails to provide a standard for the jury to employ when balancing aggravating and mitigating factors; (5) fails to provide for meaningful appellate review in the event of a conviction and sentence of death; (6) authorizes the Government to offer evidence of aggravating circumstances under a relaxed evidentiary standard; (7) fails to significantly narrow the class of murderers for which the death penalty may be imposed; (8) deprives Defendant of the opportunity to rebut the Government's argument at the sentencing phase of trial; (9) requires the judge to accept the jury's verdict of death; (10) prohibits Defendant from waiving a jury trial on the issue of sentencing without the Government's consent under 18 U.S.C. § 3593(b); (11) violates the double jeopardy clause of the Fifth Amendment through its remand provision, 18 U.S.C. § 3595(c)(2)(B); (12) allows the Government to file a Notice of Intent to seek death when Defendant has not been indicted for a capital crime; (13) violates the Ninth and Tenth Amendments to the Constitution; and (14) authorizes the death penalty, which is cruel and unusual punishment under all circumstances. Consequently, Defendant maintains that this Court should strike the Government's Notice of Intent to seek the death penalty.

In sum, Defendant mounts numerous facial attacks upon the FDPA. The Government contends that courts considering Defendant's arguments have uniformly found that such arguments lack merit. After providing a brief overview of the FDPA's sentencing phase, this Court will address each attack asserted by Defendant.

#### 1. Overview of FDPA's Sentencing Phase

The FDPA, 18 U.S.C. §§ 3591–3598, establishes procedures for imposing the death penalty for over sixty offenses. As an initial matter, the Government must serve a defendant with a pretrial notice of the Government's intent to seek the death penalty, a document which lists both the statutory and nonstatutory aggravating factors the prosecution intends to prove. 18 U.S.C. § 3593(a). In this case, the Government filed its Notice of Intent ("NOI") on December 8, 2006.

Under the FDPA, the death sentence can only be imposed if the jury first determines that the defendant is guilty of the underlying death-eligible crimes.[10] If the defendant is found guilty, the sentencing phase begins, and the jury must find unanimously and beyond a reasonable doubt

---

10. In the case sub judice, the death-eligible crimes are listed in Counts One and Three (Killing with Intent to Retaliate for Providing Law Enforcement Information Relating to the Commission of a Federal Offense, in violation of 18 U.S.C. § 1513(a)(1)(B); and Killing with Intent to Retaliate for Attendance as a Witness and/or Testimony Given at a Trial Relating to the Commission of a Federal Offense, in violation of 18 U.S.C. § 1513(a)(1)(A), respectively).

that the defendant was 18 years of age or more at the time of the offense, and that he had the requisite mental state when he committed the offense.[11] 18 U.S.C. §§ 3591(a) and 3591(a)(2)(A)-(D). Third, the jury must find, unanimously and beyond a reasonable doubt, that at least one statutory aggravating factor exists.[12] Only if the jury finds both the requisite mental state and the existence of one statutory aggravating factor does the defendant become death eligible. Fourth, the jury considers that aggravating factor, plus any additional statutory aggravating factors *and* nonstatutory aggravating factors that the Government has set forth, and weighs them against any mitigating factors the jury has found to be present.[13] 18 U.S.C. § 3593(e) ("[T]he jury ... shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death."). Under 18 U.S.C. § 3591, the jury may recommend death, life imprisonment, or a lesser sentence, if it does so by a unani-

mous vote. If the jury is deadlocked, the court must sentence the defendant. Finally, although § 3593(e) uses the word "recommend" in describing the jury's decision to impose a death sentence, § 3594 indicates that the court "shall" sentence in accordance with the jury's verdict. *Id.*

## 2. Nonstatutory Aggravating Factors Under the FDPA

 Defendant argues that the FDPA violates the nondelegation doctrine by allowing the prosecution, a part of the Executive branch, to choose arbitrarily as many nonstatutory aggravating factors as it deems appropriate. Defendant asserts that this power to allege various nonstatutory aggravators constitutes an improper delegation of an inherently legislative authority. In addition, Defendant argues that, by permitting the weighing of "an unlimited number of unguided nonstatutory aggravating circumstances," the FDPA invites use of "vague and other constitutionally troublesome factors to be added to the cauldron from which a sentence of life or death will ultimately emerge." Such assertions have been summarily and per-

11. The jury must find, beyond a reasonable doubt, that the defendant:
 (a) intentionally killed the victim;
 (b) intentionally inflicted serious bodily injury that resulted in the death of the victim;
 (c) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
 (d) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act....

18 U.S.C. § 3591(a)(2)(A)-(D). In this case, the Government lists (a) and (b), above, as statutory proportionality factors.

12. In this case, the Government's NOI lists the following statutory aggravating factors:

 i. Previous Conviction of Violent Felony Involving Firearm; § 3592(c)(2)
 ii. Conviction for Serious Federal Drug Offense; § 3592(c)(12)
 iii. Substantial Planning and Premeditation; § 3592(c)(9)

13. While all statutory *and* nonstatutory aggravating factors need to be found unanimously beyond a reasonable doubt, only one juror needs to find the existence of a mitigating factor by a preponderance of the evidence. 18 U.S.C. § 3593(c) and (d).

suasively rejected by the Eighth, Fifth, and Tenth Circuits.

The nondelegation doctrine arises from the constitutional principle of separation of powers, specifically Article 1, § 1, which provides that "all legislative Powers herein granted shall be vested in a Congress of the United States." *See Touby v. United States,* 500 U.S. 160, 165, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991); *United States v. Mistretta,* 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Under the nondelegation doctrine, Congress may not constitutionally delegate its legislative power to another branch of government. *See Mistretta,* 488 U.S. at 372, 109 S.Ct. 647. Congress may seek aid, however, from coordinate branches of government. Delegation of congressional power, in the sentencing realm, is permissible "[s]o long as Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *United States v. Jones,* 132 F.3d 232, 239 (5th Cir.1998) (citing *Mistretta,* 488 U.S. at 390, 109 S.Ct. 647 (internal citations omitted)). The *Jones* court explained that the "authority to define nonstatutory aggravating factors falls squarely within the Executive's broad prosecutorial discretion, much like the power to decide whether to prosecute an individual for a particular crime." In so holding, the Court noted that the legislature, acting alone, could not have adequately anticipated the various circumstances of each crime. *Id.*

The *Jones* Court also emphasized that this delegation of power is constitutional because it is circumscribed by four factors that, when taken together, form an "intelligible principle" that adequately limits prosecutorial power. First, the prosecution must give prior notice to the defendant with regard to all aggravating factors. *Id.* at 240; *see* 18 U.S.C. § 3593(a). Second, "the death penalty jurisprudence devised by the Supreme Court guides the prosecution in formulating nonstatutory aggravating factors." *Id.* Third, the district court retains its function as "gatekeeper" excluding information it deems irrelevant or too prejudicial. *Id.; see* 18 U.S.C. § 3593(c). Fourth, the nonstatutory aggravators are not even contemplated by the jury unless the jury has already found the requisite mens rea and at least one statutory aggravating factor beyond a reasonable doubt. *Id.; see* 18 U.S.C. § 3593(d).

Thus, a prosecutor's power to promulgate nonstatutory aggravating factors is not without an intelligible principle; rather, the prosecution must act within congressionally mandated and court-imposed constraints. *See United States v. Paul,* 217 F.3d 989, 1003 (8th Cir.2000) (finding no violation of the separation of powers because "the prosecution was adequately limited in its power" by the factors listed in *Jones*); *United States v. McCullah,* 76 F.3d 1087, 1106–07 (10th Cir.1996) (finding the notice requirement, the court's power to exclude certain information, and the requirement that the jury first find mens rea and a statutory aggravating factor adequately guided the prosecution's choice of nonstatutory aggravators); *see also United States v. Fell,* 360 F.3d 135 (2d Cir. 2004) (citing *Jones* with approval, but without discussion); *United States v. Quinones,* No. 00 CR.761, 2004 WL 1234044, at *2 (S.D.N.Y. June 3, 2004) ("Similarly, allowing the prosecution to present nonstatutory factors does not offend the nondelegation doctrine since 'the sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch.'") (citing *Zant,* 462 U.S. at 878, 103 S.Ct. 2733). This Court agrees with the reasoning set forth in the above

cases and holds that because the prosecution's power is limited by an intelligible principle, the FDPA does not violate the nondelegation doctrine by allowing the prosecution to choose nonstatutory factors. In addition, because such power is circumscribed by the factors listed above, the weighing of nonstatutory aggravating factors is not unconstitutionally vague.[14]

### 3. Defendant's Right to Present Mitigating Evidence Under the FDPA

Defendant argues that the FDPA attempts to limit the mitigating evidence that a capital defendant can offer at the sentencing phase of trial. Defendant points to "restrictive" language contained in the mitigating circumstances defined in 18 U.S.C. § 3592(a), such as "significant" impairment or "severe" emotional disturbance. Section 3592(a) states that the "finder of fact shall consider *any* mitigating factor." (Emphasis added). In addition to the seven factors listed in § 3592(a), which Defendant cites as using "restrictive" language, Defendant is also permitted to introduce "[o]ther factors in the Defendant's background, record, or character or any other circumstance, of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8). Clearly, then, the FDPA does not limit the mitigating evidence Defendant may produce.

 Defendant alternatively contends that 18 U.S.C. § 3593(f) limits the mitigating evidence he may produce because that section requires this Court to instruct the jury that:

in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be.

In the case sub judice, Defendant is an African–American male. Hence, Defendant argues that the statute improperly limits his right to offer any evidence that is relevant and pertains to his character or background. This Court concludes that neither the Constitution nor the FDPA prevents the jury from considering the "effects and experiences" of the protected factors found within § 3593(f). As the Fifth Circuit noted:

Although race per se is an irrelevant and inadmissible factor, the effects and experiences of race may be admissible [during sentencing]. If a defendant can show that his life has been marked by discrimination or some other set of experiences, irrespective of whether the result, in part, of his race, then that properly might be admissible as relevant mitigating background or character evidence. But this is a far cry from using race in and of itself as a proxy for such a set of beliefs and experiences. Pigmentation does not define a person's character or background; the life that a person has led and the things that he has experienced do.

*United States v. Webster,* 162 F.3d 308, 355 (5th Cir.1998). Thus, the FDPA actually complies with the constitutional mandate that race be irrelevant during sentencing, "while at the same time per-

---

14. Of course a specific aggravating factor may be struck by a court pursuant to the court's gatekeeping function. For instance, "an aggravating factor that is necessarily and wholly subsumed by a different aggravator within the same death penalty notice is invalid per se and should not be submitted to the penalty jury for sentencing consideration." *United States v. Bin Laden,* 126 F.Supp.2d 256, 259 (S.D.N.Y.2000).

mitting the jury to hear mitigating evidence concerning the defendant's experiences resulting from his race, color ... and the effect those experiences had on his life." *United States v. Cooper,* 91 F.Supp.2d 90, 102 (D.D.C.2000). As a result, this Court concludes that the FDPA does not unconstitutionally limit Defendant's right to present mitigating evidence.

### 4. Standard for Balancing Aggravating and Mitigating Factors

Defendant's next challenge is that the FDPA is unconstitutional because it does not provide a standard for the jury to employ when balancing aggravating and mitigating factors. To the contrary, the FDPA provides that a death sentence may be imposed only if "the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist or, in the absence of a mitigating factor, whether the aggravating factors or factor alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e). Moreover, the Supreme Court held that as long as a capital sentencing scheme permits a jury to consider "relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime," the Constitution does not require that the jury "be instructed how to weigh any particular fact in the capital sentencing decision." *Tuilaepa v. California,* 512 U.S. 967, 979, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994); *Buchanan v. Angelone,* 522 U.S. 269, 276, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998). Defendant's argument is therefore without merit.

### 5. Appellate Review under the FDPA

■■■ Defendant contends that the FDPA fails to provide for meaningful appellate review for several reasons: first, the statute requires Defendant to file a notice of appeal; second, the FDPA prevents the appellate court from considering proportionality; and third, the statute restricts appellate review to issues objected to by trial counsel. The Government, in turn, contends that 18 U.S.C. § 3595(a) allows for appellate review of the "entire record" and points out that Defendant failed to cite any cases holding that the statute fails to provide for meaningful review.

As a threshold matter, Defendant has yet to be tried, let alone convicted. His challenge to the FDPA on appellate issues is therefore unripe. *United States v. Carlos Ivan Llera Plaza,* 179 F.Supp.2d 444, 461 (D.Pa.2001), rev'd on other grounds, 188 F.Supp.2d 549 (2002). Furthermore, if Defendant is convicted and the jury renders a verdict of death, Defendant's challenge to the procedure by which appellate review is to be pursued should be addressed to the court of appeals, not to this Court. *Id.*

Assuming, arguendo, that Defendant's argument is ripe, this Court agrees with the Government that the FDPA provides for meaningful appellate review. The statute directs the appeals court to review the entire record of the case, including the evidence submitted at trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned, and determine whether the: (1) sentence of death was imposed "under the influence of passion, prejudice, or any other arbitrary factor;" (2) "admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor;" and (3) "proceedings involved any legal error requiring reversal of the sentence." 18 U.S.C. § 3595(c).

Moreover, while the Constitution requires meaningful appellate review in death penalty cases, there is no requirement that review be automatic. *United States v. Davis,* 904 F.Supp. 554, 558

(E.D.La.1995). The burden of filing an appeal is "not onerous." *Cooper*, 91 F.Supp.2d at 99. Having appointed Defendant's counsel, this Court is confident that they are more than capable of timely filing a proper notice of appeal should their client be convicted of a capital offense and sentenced to death. *Id.*

Furthermore, Defendant argues that the FDPA prevents the appellate court from considering proportionality. Proportionality review in capital cases requires an appellate court to determine whether the death sentence is "unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime." *Pulley v. Harris*, 465 U.S. 37, 43, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). While the Supreme Court extols the virtues of proportionality review, it has held that the constitution does not require such a form of review. *Id.* at 44, 104 S.Ct. 871. However, nothing in the FDPA prevents an appellate court from undertaking proportionality review if the court so chooses. *United States v. McVeigh*, 944 F.Supp. 1478, 1486 (D.Col. 1996). As such, the appellate proceedings provide adequate protection against arbitrary and capricious sentencing, and the FDPA does not run afoul of the Constitution by failing to require proportionality review. *United States v. Perez*, 2004 WL 935260, at \*15–16, 2004 U.S. District LEXIS 7500, at \*47–49 (D.Conn. Apr. 29, 2004).

Lastly, Defendant contends that the statute restricts appellate review to issues objected to by trial counsel. Nothing in the FDPA, however, would preclude plain error review. The statute provides for review of errors "properly preserved for appeal under the rules of criminal procedure." 18 U.S.C. § 3595(c). Federal R.Crim. P. 52(b) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In addition, the Supreme Court held that the FDPA "does not explicitly announce an exception to plain-error review, and a congressional intent to create such an exception cannot be inferred from the overall scheme." *Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

This Court, therefore, holds that the FDPA provides for meaningful appellate review.

### 6. Evidentiary Standard under the FDPA

Defendant next maintains that the FDPA is unconstitutional because it authorizes the Government to offer evidence of aggravating circumstances under a "relaxed evidentiary standard." Defendant points to section 3593(c) which authorizes the parties to present "information" during the sentencing phase "regardless of its admissibility under the rules governing admission of evidence at criminal trials."

The Second Circuit rejected Defendant's argument in *United States v. Fell*, 360 F.3d 135 (2nd Cir.2004) by holding:

> [w]hile it is true that the [Federal Rules of Evidence ("FRE")] are inapplicable to death penalty sentencing proceedings under the FDPA, the FRE are not constitutionally mandated. Indeed, the FRE are inapplicable in numerous contexts, including ordinary sentencing proceedings before a trial judge. Moreover, the FDPA does not alter a district court's inherent obligation to exclude evidence the admission of which would violate a defendant's constitutional rights. The admissibility standard set forth in 18 U.S.C. § 3593(c) of the FDPA provides one means of complying with this responsibility.

*Id.* at 137–38; *see also U.S. v. Allen*, 247 F.3d 741, 759–60 (8th Cir.2001) (declining to accept defendant's relaxed evidentiary

standard argument); *United States v. Minerd*, 176 F.Supp.2d 424 (W.D.Pa.2001) (same); *Cooper*, 91 F.Supp.2d at 97–98 (same); *United States v. Frank*, 8 F.Supp.2d 253, 268–70 (S.D.N.Y.1998) (same). Indeed, under the FDPA provision, a trial court may exclude any information offered at sentencing if "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). This exclusionary provision is, in fact, broader in scope than the analogous exclusionary provision in Federal Rule of Evidence 403, which excludes evidence where its probative value must be *substantially* outweighed—not just "outweighed"—by prejudicial concerns. This Court therefore finds Defendant's relaxed evidentiary standard argument to be without force and finds that the evidentiary standard under the FDPA for the sentencing phase is consistent with constitutional requirements. It places before the jury "all possible relevant information about the individual defendant whose fate it must determine," *California v. Ramos*, 463 U.S. 992, 1006, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (quoting *Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (plurality opinion)), and "helps to accomplish the individualized sentencing" the Constitution requires, *Jones*, 132 F.3d at 242.

### 7. Class of Death–Eligible Defendants

■ Defendant continues his facial attack on the FDPA by arguing that 18 U.S.C. § 3591(a)(2) "utterly fails in narrowing the class of convicted murderers who are eligible for the death penalty." In support of his contention, Defendant asserts that the requirement that the jury find the element of intent as set forth in § 3591(a)(2)(A)-(D) fails to distinguish a capital crime from other crimes involving an intentional killing. The Government counters that the FDPA sufficiently narrows the class of death-eligible defendants.

The Supreme Court has held that, "[t]o pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (quoting *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)). This Court finds that the FDPA fulfills this constitutionally mandated standard.

Because Congress has opted to define capital offenses broadly, the requisite narrowing of death-eligible defendants occurs at the sentencing phase of the case. *Bin Laden*, 126 F.Supp.2d at 290. It is during this phase that a jury must unanimously find, beyond a reasonable doubt, that the defendant: (1) acted with one of four statutorily prescribed gateway mental states set forth in § 3591(a)(2)(A)-(D), and (2) engaged in conduct that falls within at least one statutorily prescribed aggravating factor set forth in § 3592(c). Only after these two jury findings are made is the narrowing required by *Zant* and *Lowenfield* satisfied such that capital punishment may properly be imposed, if at all. This step in the FDPA process is known as the "eligibility phase." *Bin Laden*, 126 F.Supp.2d at 290. Because the FDPA narrows a jury's sentencing discretion by first requiring that a defendant had the requisite intent and second that at least one statutory aggravating factor is present, this Court rejects Defendant's argument. *See, e.g., United States v. Jones*, 132 F.3d 232, 241, 248–49 (5th Cir.1998).

### 8. Rebuttal During Sentencing

■ In this portion of his motion, Defendant avers that 18 U.S.C. § 3593(c) per-

mits the Government to have the "first and last word" at the sentencing phase, thereby violating the Fifth, Sixth, and Eighth Amendments to the Constitution.

The FDPA provides that the "government shall open the argument. The defendant shall be permitted to reply. The government shall then be permitted to reply in rebuttal." 18 U.S.C. § 3593(c). Without citing any authority, Defendant claims the "provision flies in the face of the Supreme Court's many pronouncements that death is different and that the procedures employed call for heightened reliability." The FDPA is consistent with federal practice and Fed.R.Crim.P. 29.1 which governs the order of presentation of closing arguments. " 'Rule 29.1 does not establish a constitutional doctrine, but rather, provides a uniform rule of federal practice.' " *United States v. Garcia*, 94 F.3d 57, 63 (2d Cir.1996) (quoting *United States v. Byrd*, 834 F.2d 145, 147 (8th Cir.1987)). This Court finds that because the Government has the burden of proving aggravating factors beyond a reasonable doubt, the federal practice set forth in § 3593(c) is appropriate.

### 9. Adoption of Jury's Verdict

■ Defendant proffers the argument, unsupported by case citations, that the FDPA is unconstitutional because it requires the trial judge to follow the jury's verdict for death, if such a verdict is reached. Section 3594 provides:

> Upon a recommendation under section 3593(e) [18 U.S.C.S. § 3593(e) ] that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly. Otherwise, the court shall impose any lesser sentence that is authorized by law. Notwithstanding any other law, if the maximum term of imprisonment for the offense is life imprisonment, the court may impose

a sentence of life imprisonment without possibility of release.

Under § 3594, therefore, a jury's recommendation is binding on the court. *United States v. Sampson*, 275 F.Supp.2d 49, 61 (D.Mass.2003). The Supreme Court has expressed a strong preference for jury sentencing in capital cases and has never held that the final sentence must be made by the trial judge rather than the jury. *Gregg v. Georgia*, 428 U.S. 153, 193, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Witherspoon v. Illinois*, 391 U.S. 510, 519 n. 15, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In addition, as discussed above, the FDPA provides for meaningful appellate review. This Court therefore holds that the FDPA is not unconstitutional on the basis that it requires the trial judge to follow the jury's verdict for death.

### 10. Jury Trial Waiver

■ The FDPA provides that the penalty phase may be conducted "before the court alone, upon motion of the defendant and with the approval of the attorney for the government;" otherwise, it is to take place before a jury. 18 U.S.C. § 3593(b). Defendant contends that this section of the FDPA impermissibly prohibits him from waiving a jury trial during the penalty phase without the Government's consent. As a threshold matter, this Court notes that Defendant's motion is not ripe because he has not moved for a bench trial. *United States v. Llera Plaza*, 179 F.Supp.2d 444, 461 (E.D.Pa. 2001). Moreover, the Government states in its response in opposition that it would not object if Defendant so moved, therefore rendering Defendant's argument moot.

Even if Defendant's argument were ripe and not moot, this Court would find it to be without merit. As Defendant admitted in his motion, the Supreme Court held that

a criminal defendant does not have an unfettered right to waive a jury and demand a bench trial. *Singer v. United States,* 380 U.S. 24, 36–37, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (concluding that a "defendant's only constitutional right concerning the method of trial is to an impartial trial by jury"). Moreover, the Supreme Court has expressed a strong preference for jury sentencing in capital cases. *See Gregg,* 428 U.S. at 193, 96 S.Ct. 2909; *Witherspoon,* 391 U.S. at 519 n. 15, 88 S.Ct. 1770. Accordingly, this Court finds that the Constitution "neither confers nor recognizes" a right of criminal defendants to insist on a penalty phase hearing before this Court, and that § 3593(b) sets forth a "reasonable procedure" governing attempted waivers of the right conferred by the FDPA to a capital sentencing hearing before a jury. *See Singer,* 380 U.S. at 26, 85 S.Ct. 783; *see also Cooper,* 91 F.Supp.2d at 103 (rejecting identical arguments); *United States v. Gooch,* 2006 WL 3780781 at *17 (D.D.C. Dec.20, 2006) (same).

**11. Remand and Double Jeopardy**

The FDPA provides that the Court of Appeals "shall remand the case for reconsideration under § 3593 or imposition of a sentence other than death" whenever it finds that any of three circumstances is present:

(A) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or

(C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure.

18 U.S.C. § 3595(c)(2). Defendant asserts that 18 U.S.C. § 3595(c)(2)(B) violates the double jeopardy clause of the Fifth Amendment because it "authorizes re-imposition of the death sentence after an appellate finding that evidence was insufficient to support the existence of a statutory aggravating circumstance." The Government responds, and this Court agrees, that Defendant's argument is not ripe because he has not been convicted of any offense arising out of the indictment. *Llera Plaza,* 179 F.Supp.2d at 462. Thus, this Court will not address Defendant's arguments.

**12. Indictment and Notice of Intent to Seek Death Penalty**

The Fifth Amendment explains that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Defendant asserts that his case did not become a capital case until the Government filed its NOI *after* the grand jury returned its indictment, and therefore, the NOI violates the Fifth Amendment. The Government agrees with Defendant's statement of law that there is a "requirement that at least one eligibility factor be legislatively specified [and] there is also a Fifth Amendment requirement that the required factor be found by a grand jury." The Government asserts that Defendant's Indictment makes it clear that he was indicted with "at least one eligibility factor" for a capital offense. In other words, the Government contends that it presented to the grand jury, and required it to find, the facts necessary to qualify defendant for death under the FDPA.

"An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an ac-

quittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The indictment against Defendant clearly satisfies this requirement. The intent requirement in the FDPA "does not concern the guilt or innocence of the defendant-it establishes no new elements of the crime of murder that must be found by the jury [and] 'does not affect the state's definition of any substantive offense, even a capital offense.'" *Cabana v. Bullock,* 474 U.S. 376, 385 & n. 3, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), abrogated on other grounds, *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (quoting *Reddix v. Thigpen,* 728 F.2d 705, 709 (5th Cir.1984)). Rather, the intent elements are aggravating factors to be considered at sentencing. An indictment does not require the enumeration of "sentencing factor[s] that come[ ] into play only after a defendant has been found guilty of one of those crimes beyond a reasonable doubt." *McMillan v. Pennsylvania,* 477 U.S. 79, 86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *see also Walton v. Arizona,* 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *Buckley v. Butler,* 825 F.2d 895, 902–03 (5th Cir.1987); *United States v. Spivey,* 958 F.Supp. 1523, 1527 (D.N.M. 1997).

The Court in *United States v. Allen* explained that the Fifth Amendment requires that the grand jury find and charge in the indictment at least one statutory aggravating factor and the mens rea requirement. *United States v. Allen,* 406 F.3d 940, 949 (8th Cir.2005), *en banc* (citing *United States v. Robinson,* 367 F.3d 278, 284 (5th Cir.); *United States v. Quinones,* 313 F.3d 49, 53 n. 1 (2d Cir.2002)). "The indictment must include at least one statutory aggravating factor to satisfy the Fifth Amendment because that is what is required to elevate the available statutory maximum sentence from life imprisonment

to death." *Id.* In this case, Defendant's Indictment shows that the grand jury found the mens rea requirement and three statutory aggravating factors. This Court, therefore, finds no Fifth Amendment violation.

### 13. FDPA under the Ninth and Tenth Amendment

■ Defendant argues that the FDPA violates the Ninth and Tenth Amendments because "criminal prosecution is traditionally a state function." The Government correctly notes that dual sovereignty exists in this case, and the United States, with the State of Ohio's blessing, may exercise its sovereignty in this matter. *Printz v. United States,* 521 U.S. 898, 918, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). Consequently, Defendant's argument under the Ninth and Tenth Amendments is not well-taken.

### 14. FDPA under the Eight Amendment

Finally, Defendant argues that the death penalty is, in all cases, cruel and unusual punishment. This argument is foreclosed by Supreme Court precedent, *see McCleskey v. Kemp,* 481 U.S. 279, 300–03, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and it is the "[Supreme] Court's prerogative alone to overrule one of its precedents." *United States v. Hatter,* 532 U.S. 557, 567, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001).

Defendant's Motion to strike the Notice is thus **DENIED** in its entirety.

**Q. Defendant's Notice of His Intent to Preserve the Constitutional Basis of All Arguments or Objections Preserved Herein (Doc. # 59)**

■ Defendant attempts to raise and preserve all rights and privileges guaranteed by the U.S. Constitution with all ob-

jections or motions submitted in this matter. Specifically, Defendant asserts that, in the interest of preserving his rights to due process of law and in the interest of judicial economy, "every hearsay, relevance, or Fed.R.Evid. Rule 403 objection is deemed to have also been made under the Due Process Clause of the Fifth, and Fourteenth Amendments and under the Confrontation Clause of the Sixth and Fourteenth Amendments to the United States Constitution." The Government opposes Defendant's Notice and contends that a blanket notice of "future" objections is invalid.

This Court agrees with the Government. Indeed, a blanket objection is a dangerous procedural device in that reasonable minds may differ as to when the objection was intended to begin and end. A better practice is to state a specific objection, setting forth the adequate grounds for such objection. To balance judicial economy and a trial attorney's duty to keep the record clear and complete, counsel can make a specific objection to the first objectionable question or exhibit, and simply state "same objection" to each successive question or exhibit. This Court, therefore, **REJECTS** Defendant's Notice; Defendant must raise specific objections at trial in order to permit this Court to rule on them and to preserve them for appeal.

### R. Defendant's Motion to Submit a Jury Questionnaire (Doc. # 60)

Defendant requests this Court to (1) order all prospective jurors to complete a written questionnaire under oath; and (2) distribute the completed questionnaires to counsel for the parties in advance of voir dire to allow counsel to effectively and efficiently attempt to seat a jury. Defendant has also indicated that he will supplement this Motion with a proposed Jury Questionnaire. The Government does not oppose Defendant's Motion. This Court **GRANTS** Defendant's Motion and will submit questionnaires to proposed jurors. This Court will ask jurors to have their questionnaires postmarked no later than 30 days prior to the start of the trial.

### S. Defendant's Motion to Dismiss the U.S. Attorney's Request for the Death Penalty because of Racial Discrimination and for Discovery of Information Pertaining to the Government's Capital Charging Practices (Doc. # 61)

Defendant, a black male, moves this Court to dismiss the Government's request for the death penalty because he contends that African–Americans are vastly over-represented among federal capital defendants. Defendant claims that the Government's request is based on a pattern of racial discrimination in violation of the Fifth and Eight Amendments of the United States Constitution. In addition, Defendant seeks discovery relating to the charging practices of the Government in support of his contention that race played a role in the Attorney General's decision to seek the death penalty in his case. The Government contends that Defendant makes a serious allegation without the support of law or facts. Before turning to Defendants arguments for dismissal and discovery, this Court will provide an overview of the process by which the Attorney General elects to pursue the death penalty.

#### 1. Overview of Capital Charging Procedure

The Government filed its Notice of Intent on December 8, 2006 after completing a lengthy decision-making process set forth in the United States Attorneys Manual (hereinafter, "USA Manual"). Since 1995, there have been four major steps the federal capital approval process:

First, a U.S. Attorney must initially decide whether to charge a defendant within his jurisdiction with a capital-

eligible offense. Second, all 94 U.S. Attorneys must submit for DOJ review any case involving a capital-eligible defendant, and include with such submission their recommendation on whether to seek the death penalty against that defendant. Third, every submission is then considered by the Attorney General's Review Committee on Capital Cases ("Review Committee") which makes its own independent recommendation on whether to seek the death penalty. Fourth, the Attorney General evaluates all the capital-eligible cases submitted by the U.S. Attorneys, along with the two accompanying recommendations, and issues final direction on whether to seek the death penalty against each defendant.

*United States v. Bin Laden,* 126 F.Supp.2d 256, 258 (S.D.N.Y.2000). Such protocol "provides for centralized review of any death penalty decision made by attorneys acting on behalf of the United States." *In re United States,* 197 F.3d 310, 311 (8th Cir.1999).

In deciding whether it is appropriate to seek the death penalty, the United States Attorney, the Review Committee and the Attorney General may consider "any legitimate law enforcement or prosecutorial reason that weighs for or against seeking the death penalty." *See* USA Manual § 9–10.080. In particular, the decision-makers must determine whether the statutory aggravating factors applicable to the offense and any non-statutory aggravating factors sufficiently outweigh the mitigating factors applicable to the offense to justify a sentence of death, or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death. *Id.* As with all federal prosecutions, however, "bias for or against an individual based upon characteristics such as race or ethnic origin may play no role in the decision whether to seek the death penalty." *Id.*

## 2. Defendant's Motion to Dismiss Request for Death Penalty and Motion for Discovery

Defendant asserts that the Government's decision to seek death penalty authorization in this case is based on a pattern of racial discrimination. Defendant asks this Court to dismiss the request and/or to allow Defendant to conduct discovery of charging information in hopes of uncovering such discriminatory pattern. In other words, Defendant asserts a claim of selective prosecution and seeks to discover information in support of his claim.

A government prosecutor, when acting on probable cause that a crime has been committed, generally may act under unfettered prosecutorial discretion. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Because law enforcement is "a core executive constitutional function," *United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), judicial intrusion into prosecutorial decisions is justified only where the Constitution requires. *See United States v. Johnson,* 136 F.Supp.2d 553, 565 (W.D.Va.2001) (citing *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)). The Fifth Amendment's Due Process Clause forbids the Government from basing prosecution decisions on a defendant's race. *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480. In addition, the Eight Amendment bars "arbitrary and capricious" use of the death penalty, such as when decisions are solely based on race. *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). But "[b]ecause of the great danger of unnecessarily impairing the performance of a core executive constitutional function and the 'presumption of regularity' that supports prosecutorial decisions, a defendant must support a selective-prosecution claim with 'clear evidence.'" *Unit-*

ed States v. Olvis, 97 F.3d 739, 743 (4th Cir.1996) (citing Armstrong, 517 U.S. at 465, 116 S.Ct. 1480). This standard is a "demanding" and "rigorous" one. Armstrong, 517 U.S. at 465–68, 116 S.Ct. 1480.

■ To prevail on a claim for selective prosecution, a defendant must demonstrate that the decision to prosecute "had a discriminatory effect and that it was motivated by a discriminatory purpose." Olvis, 97 F.3d at 743 (citing Wayte v. Untied States, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). In other words, the defendant has the burden of establishing: (1) that "similarly situated individuals of a different race were not prosecuted," Armstrong, 517 U.S. at 465, 116 S.Ct. 1480; and (2) that the decision to prosecute was "invidious or in bad faith," United States v. Berrios, 501 F.2d 1207, 1211 (2nd Cir.1974); McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Similarly, to obtain discovery in support of a selective-prosecution claim, a defendant must produce "some evidence" making a "credible showing" of both discriminatory effect and discriminatory intent. Armstrong, 517 U.S. at 468–69, 116 S.Ct. 1480. Just as the standard for a selective prosecution claim is a rigorous one, so too is the related evidentiary threshold for obtaining discovery in support of such claim. Id. Such criterion is necessary because it will require governmental resources and may disclose prosecutorial strategies. Id.

As to discriminatory effect, a "similarly situated" person for selective prosecution purposes is "one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and

against whom the evidence was as strong or stronger than that against the defendant." United States v. Smith, 231 F.3d 800, 810 (11th Cir.2000). Put another way, an individual is similarly situated only if "[t]he circumstances present no legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." Olvis, 97 F.3d at 743.

■ Here, Defendant fails to offer any evidence of individuals similarly situated to him, but of a different race, who were not prosecuted. Defendant relies heavily upon the Survey of Federal Death Penalty System (1988–2000) ("DOJ Study") and reports from the Death Penalty Information Center in support of his motion. Defendant reports that, although African–Americans represent 13% of the U.S. population, 39.2% of the federal prisoners, and 24% of federal defendants convicted of murder, African–Americans comprise 53% of the defendants authorized for capital prosecutions.

While this Court finds such statistics troubling, it holds that Defendant's reliance on them is flawed. First, the DOJ Study provides statistical evidence, broken down by race as to all capital-eligible defendants, and not specifically as to those capital-eligible defendants who are similarly situated to Defendant. In falling to provide such information, the numbers offer no basis for comparison. Second, the United States District Court for the Southern District of New York examined the entire DOJ Study and noted that the Study compares the relative rates of capital eligible offenders and capital approval within each racial group. Bin Laden, 126 F.Supp.2d at 259. Those figures reveal that African–American and Hispanic defendants who were capital-eligible were actually being approved for the federal death penalty at lesser rates than their Cauca-

sian counterparts. *Id.* at 260. Third, Defendant's reliance on the statistics does not reveal that a notice of death was not filed against individuals similarly situated to Defendant. *United States v. Bass,* 536 U.S. 862, 122 S.Ct. 2389, 153 L.Ed.2d 769 (2002) ("raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants"). The proper focus, rather, is the number of individuals similarly situated to Defendant who were alleged to have committed death-penalty eligible homicides but did not face the death penalty. Neither side provided such information. According to the FBI's crime statistics for 2004 there were 14,121 reported homicides in the United States. Of that number, 50% of the offenders were African–American and 47.6% were Caucasian. While the 14,121 figure incorporates all homicides, including those that are and are not death eligible, it does not lend support to Defendant's argument that racial discrimination underlies the Government's charging practices.

Defendant has, therefore, failed to carry his burden of establishing discriminatory effect, the first step in asserting a selective-prosecution claim. This Court **DENIES** Defendant's motion to dismiss the Government's death notice. This Court also finds that because Defendant has not shown "some evidence" of discriminatory effect, Defendant has not met his burden of showing that discovery on prosecution selection processes is necessary. Therefore, this Court also **DENIES** Defendant's motion for discovery.

**T. Defendant's Motion to Strike the Statutory and Nonstatutory Aggravating Factors from the Government's Notice of Intent to Seek a Sentence of Death (Doc. # 62)**

As described in the FDPA sentencing overview above, a jury can only impose a death sentence if it determines that the defendant is guilty of the underlying death-eligible crimes. Then, during the sentencing phase, the jury must find unanimously and beyond a reasonable doubt that: (1) the defendant was 18 years of age or more at the time of the offense, 18 U.S.C. § 3591(a); (2) the defendant had the requisite mental state when he committed the offense, 18 U.S.C. § 3591(a)(2)(A)-(D); and (3) at least one statutory aggravating factor exists, 18 U.S.C. § 3592(c). Only if the jury makes these findings does the defendant become death eligible and the jury may then consider any additional statutory aggravating factors *and* nonstatutory aggravating factors that the Government has set forth.

The Government set forth three statutory aggravating circumstances pursuant to 18 U.S.C. § 3592(c): (1) Defendant has previous convictions for violent felonies involving firearms; (2) Defendant has a previous conviction for a serious Federal drug offense; and (3) Defendant committed the offenses alleged in the Indictment after substantial planning and premeditation. Further, the Government's NOI also introduced four nonstatutory aggravating factors pursuant to 18 U.S.C. §§ 3593(a)(2) and 3592(c): (1) Defendant has engaged in a continuing pattern of violent conduct; (2) Defendant has previous felony convictions; (3) Defendant is likely to commit or attempt to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others; (4) victim impact evidence. Defendant moves this Court to strike the statutory and nonstatutory aggravating factors from the Government's NOI, which was filed on December 8, 2006.

Having dispensed with the constitutional challenges to the FDPA above, this Court now reviews Defendant's specific challenges to the NOI. Although the sentencing jury is to consider all the available information relevant to its weighty deter-

mination, there are, of course, limits on what types of aggravating factors, both statutory and nonstatutory, the prosecution can present to the jury. Death penalty jurisprudence has identified several guideposts for determining what constitutes an improper aggravating factor. It is widely recognized that due to the FDPA's weighing scheme, *each* factor can be the one that tips the scales in favor of death. *See Jones v. United States*, 527 U.S. 373, 398, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) ("[T]he weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor.") (citing *Stringer v. Black*, 503 U.S. 222, 232, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992)).

■■■ First, the aggravator may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Stated differently, "if the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the [factor] is constitutionally infirm." *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). Second, the aggravating circumstance may not be unconstitutionally vague, so as to lack "some common-sense core meaning . . . that criminal juries [are] capable of understanding." *Tuilaepa*, 512 U.S. at 972–73, 114 S.Ct. 2630. Third, the aggravator must be "sufficiently relevant

to the question of who should live and who should die." *United States v. Grande*, 353 F.Supp.2d 623, 634 (E.D.Va.2005) (striking a factor because "a high school fight is unconstitutionally irrelevant to the determination of 'who should live and who should die' ") (citing *United States v. Davis*, 912 F.Supp. 938, 943 (E.D.La. 1996)). Fourth, even if the aggravator appears relevant to the jury's determination, information may be excluded "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c); *see also United States v. Friend*, 92 F.Supp.2d 534, 541 (E.D.Va. 2000) (deeming it "essential that an aggravating factor be measured in perspective of the fundamental requirement of *heightened reliability* that is the keystone in making 'the determination that death is the appropriate punishment in a specific case' ") (citing *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)).[15] Fifth, some courts have held that an aggravating factor cannot be duplicative of another aggravating factor. *United States v. McCullah*, 76 F.3d 1087, 1111–12 (10th Cir.1996). Against this backdrop, this Court addresses Defendant's specific challenges to the Government's NOI.

### 1. Special Eligibility Findings

As a threshold matter, this Court rejects Defendant's argument that the special eli-

---

**15.** The Supreme Court has emphasized that "heightened reliability" is essential during death penalty proceedings due to the finality of the result. *See Woodson*, 428 U.S. at 305, 96 S.Ct. 2978 ("[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long, [thus] . . . there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."). To achieve this heightened degree of reliability, "the Supreme Court has also made clear that . . . *more* evidence, not less, should be

admitted on the presence or absence of aggravating and mitigating factors." *United States v. Fell*, 360 F.3d 135, 143 (2d Cir.2004) (citing *Gregg*, 428 U.S. at 203–04, 96 S.Ct. 2909 ("We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision")); *see also Zant v. Stephens*, 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) ("What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.").

gibility findings fail to add any factor that narrows the class of murders eligible for the death penalty. In compliance with 18 U.S.C. § 3591(a), the Indictment in the instant case alleges that the grand jury determined that Defendant met the threshold requirements for eligibility for the death penalty in that: (1) Defendant was 18 years of age or older at the time of the offense, 18 U.S.C. § 3591(a); (2) Defendant intentionally killed Robert Bass and Ecolia Washington, 18 U.S.C. § 3591(a)(2)(A); and (3) Defendant intentionally inflicted serious bodily injury that resulted in the death of Robert Bass and Ecolia Washington, 18 U.S.C. § 3591(a)(2)(B).

These findings satisfy the first two requirements of the death penalty statute and Defendant has offered no authority for the proposition that these factors are constitutionally infirm. Only if the jury finds a statutory aggravating factor in addition to these requirement is the Defendant eligible for the death penalty. Therefore, Defendant's argument that these findings alone do not narrow the class of death eligible defendants is premature without consideration of the statutory aggravating factors.

### 2. Statutory Aggravating Factors

Defendant argues that the statutory aggravating factors alleged in the NOI fail to meet constitutional standards because either the factors are vague, fail to narrow the class of persons eligible for the death penalty, or do not apply to the facts of the case. This Court will review each factor listed in the NOI.

### a. Previous Convictions for Violent Felonies Involving Firearms (18 U.S.C. § 3592(c)(9))

The Government alleges in the indictment that Defendant has two previous convictions for violent felonies involving firearms: (1) Armed Bank Robbery on October 30, 1981 in the United States District Court for the Middle District of Georgia; and (2) Voluntary Manslaughter on October 4, 1982 in the Franklin County Court of Common Pleas. Defendant argues that, while the Government may be able to establish that these convictions exist, the first duplicates elements of the underlying murders alleged in the indictment and neither provides an additional element that narrows the class of death eligible defendants. Count One and Three of the indictment charge Defendant with killing the victims in retaliation for providing information to a government agent and testifying against Defendant about the 1981 armed bank robbery in Georgia. Defendant argues that alleging that Defendant was convicted for this same bank robbery with a weapon does not aggravate the charge of murdering in retaliation for providing information about that robbery, and merely duplicates the underlying charges.

Relevant case law rejects Defendant's duplicative argument and holds that Congress, in drafting the FDPA, anticipated that the sentencing jury would consider the circumstances of the underlying crime, and thus, incorporated it into the FDPA as a statutory aggravator. *See* 18 U.S.C. § 3592(c)(1) (listing "death during commission of another crime" as an aggravating factor). Further, duplication occurs when the jury is asked, at the sentencing stage, to consider two or more aggravating factors that are essentially interchangeable; here, however, the sentencing jury will only consider the underlying crime one time during the trial phase and one time during sentencing phase, not twice during the latter. *See United States v. Frank*, 8 F.Supp.2d 253, 276–77 (S.D.N.Y.1998) ("Once the penalty phase has begun, the jury is asked to consider only once the fact that the murder occurred in the course of the commission of another crime. That the jury may find it relatively easy, based

on its guilty verdict, to find the existence of this factor does not unfairly tip the scales toward death."); *see also United States v. Jones,* 132 F.3d 232, 249 (5th Cir.1998) ("the kidnapping was weighed only once by the jury during the penalty phase of the trial"). Finally, "the jury should be guided as to how it should weigh the connection between a victim's death and Defendant's predicate crimes." *United States v. Bin Laden,* 126 F.Supp.2d 290, 301 (S.D.N.Y.2001) (" 'To expect the jury to shut out entirely the circumstances of the underlying offense at the penalty phase blinks reality' " and will only "increase the risk of arbitrariness.") (citing *Frank,* 8 F.Supp.2d at 277). Indeed, this Court is particularly troubled by the notion of asking the jury to determine Defendant's sentence without allowing the jury to consider the crime itself.

As applied to the case sub judice, this Court finds that Count One and Three of the Indictment and the first statutory aggravating factor are non-duplicative. Likewise, this Court finds that the aggravator adequately narrows the number of death eligible defendants and is sufficiently comprehensible such that it is not void for vagueness. In addition, Defendant's conviction for Voluntary Manslaughter, while perhaps not directly related to the underlying offenses, is relevant as a statutory aggravating factor. Thus, Defendant's motion to strike the first statutory aggravating factor is **DENIED.**

### b. Previous Conviction for a Serious Federal Drug Offense

 Defendant challenges the second aggravating factor, conviction for a serious Federal drug offense, i.e., Defendant's 2002 conviction for Conspiracy to Distribute over 100 kilograms of marijuana in the United States District Court for the Southern District of Ohio. Defendant argues that because this factor was not charged in the Indictment nor presented to the Grand Jury, the Government's reliance on it to "propel a murder case into a capital case where death is a possibility" violates the Fifth, Sixth, and Eighth Amendments, as interpreted by the Supreme Court of the United States in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Essentially, Defendant argues that *Apprendi* and *Ring* should be read to require the Government to allege *all* aggravating factors in the indictment in a death penalty case.

*Apprendi* held that any fact increasing the maximum punishment, *other than prior convictions,* must be charged in the indictment, submitted to the grand jury, and proved beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Two years later, in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Supreme Court clarified *Apprendi,* emphasizing that the *Apprendi* ruling applies to capital-sentencing schemes, and where at least one aggravating circumstance must be found before a death sentence can be imposed, the finding of that particular aggravating circumstance operates as the "functional equivalent" of an element of the offense and thus must be determined by a jury under the reasonable doubt standard.

Because the Supreme Court specifically exempted prior convictions from treatment as an element of the offense, the absence of Defendants' prior Federal drug conviction from the Indictment does not preclude the Government from including it in the NOI. Thus, Defendant's motion to strike the second statutory aggravating factor is **DENIED.**

### c. Substantial Planning and Premeditation

The Government also alleges that Defendant committed the crimes "after sub-

stantial planning and premeditation," a statutory aggravator set forth in 18 U.S.C. § 3592(c)(9). Defendant argues that the word "substantial" is unconstitutionally vague and that the factor, more generally, violates the Eighth Amendment by failing to narrow the category of defendants who are death eligible. In addition, Defendant argues that this factor merely duplicates the capital crime alleged in the indictment.

 An aggravating factor, to comport with the Eighth Amendment, must " 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' " *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (quoting *Zant*, 462 U.S. at 867, 103 S.Ct. 2733). This Court finds that this factor adequately "assist[s] the jury in distinguishing 'those who deserve capital punishment from those who do not....' " *McVeigh*, 944 F.Supp. at 1488 (quoting *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993)). As stated by the court in *United States. v. Minerd*, 176 F.Supp.2d 424, 439 (W.D.Pa.2001), "[n]ot every murder involves substantial planning and premeditation." In the case sub judice, if Defendant is found guilty on the death eligible counts, the jury will then determine whether Defendant's actions involved substantial planning and premeditation.

Defendant also asserts that the factor should be stricken for vagueness. Several courts, however, have disagreed. For example, in *United States v. Cooper*, 754 F.Supp. 617, 623 (N.D.Ill.1990), the defendants raised the same argument in the context of 21 U.S.C. § 848(n)(8), an analogous death penalty statute. The court rejected the argument, holding that the words "premeditation" and "planning" are "commonly employed" and "universally un-

derstood." *Id.* at 623. Additionally, the court found the " 'substantiality' requirement is frequently encountered and readily understood in a number of contexts in criminal law." *Id.* (citations omitted); *see also United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir.1996) (rejecting Defendant's vagueness challenge, holding "[i]n the context in which ["substantial"] appears, the term clearly has a common-sense meaning of 'considerable in quantity: significantly large,' which criminal juries *are capable of understanding*") (citing Webster's Ninth New Collegiate Dictionary 1176 (1991)). Likewise, this Court finds that the aggravator adequately narrows the number of death eligible defendants and is sufficiently comprehensible such that it is not void for vagueness. Additionally, this Court rejects Defendant's duplication argument for the same reasons set forth above. Defendant's motion to strike the "Substantial Planning and Premeditation" aggravating factor is **DENIED.**

### 3. Nonstatutory Aggravating Factors

Defendant asks this Court to strike the nonstatutory aggravating factors alleged in the NOI because, Defendant argues, the legislature unconstitutionally delegated discretion to prosecutors to fashion nonstatutory factors, and the factors are unconscionably vague, duplicative, and violate the intent of the FDPA. As a threshold matter, this Court has already discussed and rejected Defendant's nondelegation argument, above, and held that the FDPA does not violate the nondelegation doctrine by permitting the prosecution to choose nonstatutory aggravating factors.

 Section 3592(c) authorizes the jury to consider non-statutory aggravating factors as long as the Government provides notice of the factors it intends to present. The Government's NOI complies with that requirement by listing the four nonstatuto-

ry aggravating factors pursuant to 18 U.S.C. §§ 3593(a)(2) and 3592(c). Additionally, courts have endorsed the use of non-statutory aggravating factors under the FDPA (and under the analogous section of the Anti Drug Abuse Act, 21 U.S.C. § 848). *See, e.g., Llera Plaza,* 179 F.Supp.2d at 453–54; *Cooper,* 91 F.Supp.2d at 100; Frank, 8 F.Supp.2d at 265 (finding "the use of such non-statutory aggravating factors-far from injecting arbitrariness into the process-is to be encouraged."); *Chanthadara,* 928 F.Supp. at 1057; *Pitera,* 795 F.Supp. at 559.

The Supreme Court has also held that the Constitution allows consideration of nonstatutory aggravating factors "relevant to the character of the defendant or the circumstances of the crime," *Barclay,* 463 U.S. at 967, 103 S.Ct. 3418, after the sentencer first finds the gateway mental state and at least one statutory aggravating factor that narrows the class of defendants eligible for the death penalty, *Zant,* 462 U.S. at 878, 103 S.Ct. 2733. Thus, Defendant's argument that the nonstatutory factors are overbroad to the extent they fail to narrow the class of death-eligible defendants is not well taken by this court because it confuses the purposes of statutory factors and nonstatutory aggravating factors. *Cf. Jones,* 527 U.S. at 401, 119 S.Ct. 2090 ("We have not . . . specifically considered what it means for a factor to be overbroad when it is important only for *selection* purposes . . ."). Only the statutory factors are required to narrow the class of murderers who might properly face the death penalty ("eligibility"); the nonstatutory factors serve as additional information for the sentencer ("selection"). Once the jury has narrowed the class of defendants by finding guilt, the gateway mes rea, and at least one statutory aggravating factor, the focus appropriately shifts to providing the sentencer with all possible relevant information to enable it to tailor its verdict to the individual before it. *See,*

*e.g., Davis,* 912 F.Supp. at 943 (finding that after the necessary threshold findings of intent and at least one statutory aggravating factor, "the jury is then to consider other information and factors, both in further aggravation and in mitigation of the penalty. This additional information is to assist the jury in making its ultimate decision. Here, the goal is to individualize the sentence as much as possible."); *Kaczynski,* 1997 WL 716487, at *5; *Nguyen,* 928 F.Supp. at 1532.

This Court agrees with the Government in that, "as long as that information is relevant to the character of the defendant or the circumstances of the crime," consideration of non-statutory aggravating factors (like the consideration of non-statutory mitigating circumstances) serves the purpose of ensuring an individualized sentence that minimizes the risk of arbitrary and capricious action. *See Barclay,* 463 U.S. at 967, 103 S.Ct. 3418 (Stevens, J., concurring); *see also Simmons,* 512 U.S. at 163–64, 114 S.Ct. 2187; *Payne,* 501 U.S. at 820–827, 111 S.Ct. 2597; *Zant,* 462 U.S. at 878–79, 103 S.Ct. 2733. In addition this Court is aware that the FDPA requires that any information proffered at the penalty phase "may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury," 18 U.S.C. § 3593(c) (2004), and makes clear that any such factors must be "sufficiently relevant to the consideration of who should live and who should die." *Davis,* 912 F.Supp. at 943. Furthermore, the "heightened reliability doctrine" applicable to capital sentencing also governs "the admissibility of nonstatutory aggravating factors." *Bradley,* 880 F.Supp. at 285.

Against this backdrop, this Court will review each nonstatutory aggravating factor.

### a. Continuing Pattern of Violent Conduct

█ In addition to the capital offenses charged in the Indictment the Government alleges in the NOI that Defendant has engaged in a continuing pattern of violent conduct, including but not limited to one or more of the following: (1) Defendant's conspiracy and/or complicity, along with Stanley Humphrey, as it relates to the intentional killing of Edward Boyd on or about June 26, 1981; (2) Defendant's intentional killing of Ronald Beauford on or about May 30, 1981; (3) Defendant's intentional killing of Robert Catchings on or about May 30, 1981. Defendant argues that because these incidents did not result in convictions and the are remote in time to the present Indictment, inclusion of them as a nonstatutory aggravating factor would deny Defendant due process, a fair trial and a fair and reliable sentencing determination.

The Government argues that Defendant has spent a relatively short period of time outside of imprisonment (approximately five years) in the last twenty-five years. His ongoing behavior, the Government asserts, during that time is relevant to the character of Defendant or the circumstances of the crime. This Court agrees with the Government and notes the evidentiary burden the Government faces in establishing the existence of these offenses given that the Defendant was not convicted of any of these crimes: "The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt." 18 U.S.C. § 3593(c). Therefore, unless the Government establishes such behavior beyond a reasonable doubt, the jury will not be permitted to consider it when sentencing. Defendant's motion to strike this aggravating factor is **DENIED.**

### b. Previous Felony Convictions

█ The Government's NOI further alleges that Defendant has previously been convicted for (1) the felony offense of Bank Robbery, on or about April 27, 1973, in the Southern District of Ohio; and (2) the felony offense of Making a False Statement in the Acquisition of a Firearm and twelve counts of Money Laundering on or about April 29, 2002, in the Southern District of Ohio. Defendant argues that because the bank robbery is remote in time to the present Indictment and neither offenses were presented to the Grand Jury, inclusion of them as a nonstatutory aggravating factor would deny Defendant due process, a fair trial and a fair and reliable sentencing determination.

As to the remoteness if the 1973 robbery, Defendant's argument is without merit under the reasoning set forth above. Additionally, neither the Constitution nor applicable case law requires that non-statutory aggravators relied upon by the Government at trial be included in the indictment because non-statutory aggravating factors do not increase the available punishment to which a defendant might be subjected. Rather, the purpose of non-statutory aggravators is to aid the jury in selecting the appropriate sentence from the available options (i.e., death or life imprisonment) *after* the jury has already found the defendant death-eligible. 18 U.S.C §§ 3591(a)(2), 3592(c). *United States v. Higgs,* 353 F.3d 281, 298 (4th Cir.2003). Therefore, Defendant's motion to strike this aggravating factor is **DENIED.**

### c. Future Dangerousness

█ The Government's NOI alleges a nonstatutory aggravating factor intended to demonstrate Defendant's future dangerousness. Specifically, the Government states:

The defendant is likely to commit or attempt to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others. This factor is evidenced by, among other facts, his committing both of the capital offenses charged in the Indictment less than four years after being released from serving fourteen years in federal prison.

Defendant argues that this Court should strike this factor because Congress chose not to include a general future dangerousness provision within the statutory aggravating factors. Additionally, Defendant asserts that this factor is duplicative of all the other nonstatutory factors and that, if every capital defendant is a danger in the future, this factor does nothing to narrow the field of potential federal capital defendant in any meaningful way. Finally, Defendant asserts that this factor cannot satisfy the Fifth and Eight Amendments unless the Government limits its evidence and argument (and the jury is so instructed) to showing that Defendant poses a continuing danger to the lives and safety of others while serving a sentence of life imprisonment because the jury can avoid giving Defendant the death penalty, if found guilty, and sentence him to life in prison without parole.

The Supreme Court "has approved the jury's consideration of future dangerousness during the penalty phase of a capital trial, recognizing that a defendant's future dangerousness bears on all sentencing determinations made in our criminal justice system." *Simmons v. South Carolina*, 512 U.S. 154, 162, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), (citing *Jurek v. Texas*, 428 U.S. 262, 275, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.) (noting that "any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose"); *California v. Ramos*, 463 U.S. 992, 1003, n. 17, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (explaining that it is proper for a sentencing jury in a capital case to consider "the defendant's potential for reform and whether his probable future behavior counsels against the desirability of his release into society")).

The fact that Congress chose not to list "future dangerousness" as a statutory factor is irrelevant because Congress specifically allows the Government to present nonstatutory aggravating factors to the jury. Defendant's "character, prior criminal history, mental capacity, background, and age are just a few of the many factors, in addition to future dangerousness, that a jury may consider in fixing appropriate punishment." *Simmons v. South Carolina*, 512 U.S. 154, 162–164, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (citing *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Barclay*, 463 U.S. at 948–951, 103 S.Ct. 3418). Moreover, because this is a nonstatutory aggravating factor, the jury will only consider it after finding Defendant to be death-eligible; therefore, this factor does not serve the purpose of narrowing the class of death-eligible defendants. Rather, if proven beyond a reasonable doubt, the jury may consider the factor for the purpose of individualizing the sentence imposed.

This Court agrees with Defendant that he must be allowed to inform the sentencer that he would be ineligible for parole if the prosecution argues future dangerousness. *See Beard v. Banks*, 542 U.S. 406, 418, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004). As the *Simmons* Court stated:

In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant. Hold-

ing all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not. Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole.

*Simmons v. South Carolina,* 512 U.S. 154, 162–64, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). If Defendant is convicted, life imprisonment without the possibility of parole will rebut the Government's argument of future dangerousness. If necessary, this Court will instruct the jury accordingly. Defendant's motion to strike this aggravating factor is **DENIED.**

### d. Victim Impact Evidence

 The Government's NOI also alleges that, as a nonstatutory aggravating factor, "victim impact evidence" will be presented. Defendant posits that the factor is overly broad and that Congress did not intend for victim impact evidence to be presented at the sentencing phase of capital murder trials. The FDPA, at § 3593(a)(2), specifically permits the introduction of victim impact evidence in federal criminal prosecutions.

The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information. The court may permit the attorney for the government to amend the notice upon a showing of good cause.

Moreover, the narrowing function has been performed by the statutory aggravating factors in the FDPA, and the victim impact factor serves to characterize Defen-

dant and individualize his sentence. *U.S. v. Regan,* 228 F.Supp.2d 742, 753 (E.D.Va. 2002). In addition, the Supreme Court has held that there is no per se constitutional bar on victim impact evidence in capital sentencing. *See Payne v. Tennessee,* 501 U.S. 808, 831, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ("We hold merely that if a State decides to permit consideration of this evidence, the Eighth Amendment erects no per se bar."); *Jones v. United States,* 527 U.S. 373, 401–02, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) ("such evidence is surely relevant to the selection phase decision, given that the sentencer should consider all of the circumstances of the crime in deciding whether to impose the death penalty.").

In the case sub judice, the NOI indicates that the Government will present evidence concerning the impact of the victims' murders upon their families, friends, and communities. Because this evidence will help to inform the jury about the individual circumstances of the case and because the Supreme Court has determined this type of evidence constitutionally admissible, Defendant's request to strike the nonstatutory aggravating factor of victim impact evidence is **DENIED.** This Court, however, will carefully review victim impact evidence, as set forth above, to ensure the exclusion of evidence that is more prejudicial than probative.

### 4. Bifurcate Sentencing Phase

 Lastly, Defendant moves to bifurcate the sentencing phase of the proceeding, such that the nonstatutory aggravators will be heard only if the jury first finds, beyond a reasonable doubt, the existence of the gateway mens rea and at least one statutory aggravator. Defendant argues that a bifurcated sentencing phase is necessary because the Government's evidence in support of the nonstatutory aggravating factors could easily affect the

fairness and impartiality of the jury as it considers whether the threshold statutory aggravators have been proven beyond a reasonable doubt. The Government does not oppose having an "eligibility phase" followed by a separate "sentencing phase" such that evidence of nonstatutory aggravating circumstances will not be presented until the latter phase.

This Court agrees with Defendant and supporting case law and holds that the danger of unfair prejudice arising from hearing evidence on nonstatutory aggravating factors before the jury makes its determination on Defendant's eligibility for the death penalty on the basis of the gateway intent and statutory aggravating factors substantially outweighs any probative value of such evidence to determine Defendant's eligibility for a death sentence. Defendant's motion in this regard is, therefore, **GRANTED.** This Court will, accordingly, bifurcate the sentencing phase and the proceedings will operate as follows. After concluding the trial phase, if the jury finds Defendant guilty of the underlying offenses, the jury will first determine whether the gateway mens rea requirement and at least one statutory aggravating factor exist. Should the jury find as such, making Defendant eligible for the death penalty, the parties can then introduce evidence of nonstatutory aggravating and mitigating factors so that the jury can determine the appropriate penalty.

**U. Defendant's Motion to Compel Disclosure of the Government's Initial Memorandum and Supporting Documentation Regarding its December 8, 2006 Authorization to Seek Death (Doc. # 84)**

Defendant moves this Court to compel the Government to disclose its initial Memorandum and supporting documentation to the Department of Justice regarding authorization to seek the death penalty. De-

fendant claims that the documents contain exculpatory, mitigation, and impeachment evidence that, pursuant to *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), must be produced. The Government opposes the motion on the grounds that the Memorandum itself is not evidence, and the Government has already provided all exculpatory evidence to Defendant.

The parties met before this Court during a status conference on April 13, 2007. At that time the Government represented that it had turned over to Defendant all the documentation underlying the Memorandum. Defense counsel requested specific information pertaining to a Psychological Stress Evaluator (PSE) test performed on Christie Collins on November 26, 1996, which the Government asserted was not relied upon in the Memorandum. On April 16, 2007 the Pickerington Police Department provided the United States the PSE graph as well as the questions corresponding to said graph. The United States provided the information to Defendant on the same day (Doc. 99). Because Defendant has all of the evidence supporting the Government's Memorandum, and has since received the requested PSE exam, Defendant's Motion is now **MOOT.**

**V. Defendant's Motion to Dismiss counts One and Two; Alternative Motion to Sever Counts One and Two (Doc. # 85)**

Defendant requests that this Court dismiss Counts One and Two of the Indictment for lack of jurisdiction. He argues that the Government has disclosed no evidence that establishes the jurisdictional element of Count One, which alleges that Defendant "killed Robert Bass with intent to retaliate against Robert Bass for providing a law enforcement officer infor-

mation relating to the commission of a bank robbery." In the alternative, Defendant requests that this Court sever Counts One and Two from the Indictment.

The Government has presented to this Court that it intends to introduce evidence establishing that Robert Bass provided information relating to the 1981 bank robbery for which Defendant was convicted in federal court. The Government has already established probable cause, to a Federal Grand Jury, as to each and every count of the Indictment in this matter. Defendant's motion essentially amounts to a pretrial Fed.R.Crim.P. 29 motion. Should the Government fail to establish any element of any of the counts of the Indictment by the time the Government rests in its case in chief, such a motion is then proper. This Court will not dismiss the Counts at this time.

Alternatively, Defendant asks this Court to sever Counts One and Two from the Indictment. In essence, Defendant argues that the Counts are not properly joined under Fed.R.Crim.P. 8(a) because they occurred two years apart in different locals and are, therefore, not part of a continuous transaction. Even if the Counts are properly joined under Rule 8, Defendant argues that this Court should use its discretion under Fed.R.Crim.P. 14, to sever the Counts because if the Government fails to prove Counts One and Two, Defendant argues, a jury will be more likely to convict Defendant on Counts Three and Four based on the evidence admitted for Counts One and Two.

Under Rule 8(a) of Federal Rules of Criminal Procedure, an "indictment ... may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "Joinder of charges is the rule rather than

the exception and Rule 8 is construed liberally in favor of initial joinder." *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir.1995). Federal Rule 14 recognizes that there may, nonetheless, be instances where severance is appropriate. Accordingly, that Rule provides, in relevant part, "[i]f the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R.Crim.P. 14; *see also United States v. Critton*, 43 F.3d 1089, 1097–98 (6th Cir. 1995) (stating that "Rule 14 allows for severance [i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants") (internal quotation marks omitted). A defendant bears a heavy burden of showing that joinder would be unfairly prejudicial, *see United States v. Bloom*, 78 F.R.D. 591, 611 (E.D.Pa.1977), because considerations of judicial economy cause courts to strongly favor trying together all charges that arise from a given set of facts. *See United States v. Brady*, 579 F.2d 1121, 1127–28 (9th Cir.1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979); *United States v. Borish*, 452 F.Supp. 518, 524–25 (E.D.Pa.1978). Moreover, a jury is presumed competent of considering each count separately, *United States v. Rugiero*, 20 F.3d 1387, 1391 (6th Cir.1994), and any prejudice may be cured by limiting instructions, *United States v. Jacobs*, 244 F.3d 503, 507 (6th Cir.2001). *See United States v. Cope*, 312 F.3d 757, 781 (6th Cir.2002).

This Court finds that Counts One and Two were properly joined with Three and Four. While Defendant argues that, due to the two-year time lapse between the two alleged murders they are not part of the same transaction, Rule 8 also allows joinder if the counts are of the same or similar

character or are connected with or constitute parts of a common scheme or plan. Here, the alleged murders were of a similar character and as part of a common scheme: committed in retaliation for cooperation with the Government. Further, Defendant has failed to demonstrate prejudice from the joinder which would deprive him of a fair trial. Essentially, Defendant's motion is based on the supposition that the Government will fail to prove Counts One and Two. A grand jury, however, found the charges based on probable cause, and without more, Defendant's argument is unpersuasive. *See Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959) ("the intervention of a grand jury [is] a substantial safeguard against oppressive and arbitrary proceedings"). Limiting instructions will provide an adequate safeguard against any risk of prejudice in the form of jury confusion, evidentiary spillover, and cumulation of evidence. *See United States v. Berardi,* 675 F.2d 894, 901 (7th Cir.1982) (citing *United States v. Strand,* 617 F.2d 571, 575 (10th Cir.1980)); *United States v. Pacente,* 503 F.2d 543, 547 (7th Cir.1974) (en banc), cert. denied, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974). Defendant's Motion to dismiss or sever Counts One and Two is, therefore, **DENIED.**

**IT IS SO ORDERED.**